John F. GOLDEN, Jr., Defendant, Appellant,

v.

UNITED STATES of America, Appellee.

No. 6062.

United States Court of Appeals First Circuit.

June 18, 1963.

James D. St. Clair, Boston, Mass., with whom Robert E. Fast, Boston, Mass., was on brief, for appellant.

Daniel B. Bickford, Asst. U. S. Atty., with whom W. Arthur Garrity, Jr., U. S. Atty., was on brief, for appellee.

Before HARTIGAN and ALDRICH, Circuit Judges, and GIGNOUX, District Judge.

GIGNOUX, District Judge.

This is an appeal from a judgment of the United States District Court for the District of Massachusetts. The defendant was convicted by a jury on all eight counts of an indictment charging him with willfully misapplying funds totaling $158,933.58 belonging to the Everett National Bank, of which he was president, in violation of 18 U.S.C. § 656.[1]

1. 18 U.S.C. § 656 provides in pertinent part:

"Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

Each count of the indictment contained three identical paragraphs. The first such paragraph alleged that the defendant was at all material times an agent and employee of the Everett National Bank, a Federal Reserve Bank with deposits insured by the Federal Deposit Insurance Corporation. The second paragraph alleged that on or about March 10, 1959 the defendant "as president and agent of said bank" received funds in the amount of $286,069.25 for deposit in the Bank to the account and benefit of the estate of Oliver G. Kelley. The third paragraph alleged that on or about March 10, 1959 the defendant "as president and agent of said bank" deposited said funds to the account of "John F. Golden, Jr., Escrow Agent." Each count then alleged that thereafter, on a specified date between May 18, 1959 and December 9, 1959, the defendant embezzled, abstracted, purloined and willfully misapplied funds belonging to said Bank and intrusted to its custody and care by the unauthorized withdrawal from the escrow account of a stated portion of the $286,069.25 and the purchase of stock or real estate in his own name or in the name of his nominee, all in violation of 18 U.S.C. § 656.

The essential facts from which the questions presented by the defendant on this appeal arise may be briefly stated.

The total of $158,933.58 alleged to have been embezzled by the defendant was part of the proceeds of certain insurance policies on the life of Anthony Romaine, an officer and employee of the O. G. Kelley Company. Mr. Romaine lived in Tennessee and managed the operations of that company in that state.

The insurance proceeds were received by Mrs. Charles J. Burke, Jr. in the form of six checks aggregating $286,069.23: three payable to the O. G. Kelley Company, two payable to the Resisto Pipe and Valve Company, and one payable to the A. T. Stearns Lumber Company.[2]

Both of the last-named companies were corporate subsidiaries of the O. G. Kelley Company. The O. G. Kelley Company was a sole proprietorship and an asset of the estate of O. G. Kelley, who had died a resident of Newton, Massachusetts in February, 1955. Mr. Burke, his wife Ellen Burke, for whom he acted in all matters relating to the estate, and the Everett National Bank, of which the defendant was president, were co-administrators of the O. G. Kelley Estate by appointment of the Massachusetts Probate Court. Mr. Burke was also a director of each of the corporations. Ancillary administration had also been taken out in Tennessee to administer the assets of the estate in that state, which included the O. G. Kelley Company plant in Tennessee. Mr. Burke and Mr. James H. Epps, Jr. were the ancillary administrators appointed by the Tennessee court.

At a meeting on or about March 10, 1959 in the offices of the O. G. Kelley Company in Massachusetts, the insurance checks were turned over to the defendant by Mr. Burke. Present at the meeting were the defendant, representing the Bank, Mr. Burke, and Messrs. John N. Brady, William B. Pontefract, Richard L. Brickley and Arthur Johnson. Mr. Brady was an officer and general manager of the O. G. Kelley Company and a director of the two corporations. Mr. Pontefract was a director of the Bank and also a director of at least one of the two corporations. Mr. Brickley was the attorney for the O. G. Kelley Estate, and Mr. Johnson was the auditor of the O. G. Kelley Company.

Those present at the March 10, 1959 meeting were uncertain as to the status of the insurance proceeds and as to whether they should be accounted for as part of the Tennessee estate or of the estate in Massachusetts. All agreed that the checks should be turned over to the defendant, but should not be mingled with the general funds of the O. G. Kelley Estate until their status could be deter-

2. The checks payable to the O. G. Kelley Company totaled $207,083.27; those payable to the Resisto Pipe and Valve Company totaled $53,485.96; and the check payable to the A. T. Stearns Lumber Company was for $25,500.

mined. The evidence was conflicting, however, as to the understanding concerning the capacity in which the checks were delivered to the defendant. Mr. Burke testified that he turned the checks over to the defendant as the representative of the Bank with the direction "that the Everett Bank would hold the proceeds for the O. G. Kelley Estate." The defendant testified that the funds were turned over to him in his individual capacity as escrow agent, to be invested in his discretion, and with the specific instruction to keep them separate from funds of the O. G. Kelley Estate "until such time as certain questions would be resolved."

As to the disposition of the funds, the defendant freely acknowledged that following the meeting of March 10, 1959 he deposited the checks in an escrow account at the Everett National Bank in the manner described in the indictment,[3] and that thereafter he withdrew the amounts alleged, totaling $158,933.58, and made the purchases referred to in the indictment. The defendant consistently denied, however, that he had received the funds as an officer or agent of the Bank, or for the benefit of the Bank; that he had any intent to injure or defraud the Bank; and that the Bank lost any of the funds at any time.

The points raised by the defendant on this appeal all are based upon alleged errors in instructions given by the trial court arising out of the court's allegedly erroneous construction of 18 U.S.C. § 656. In brief summary, the defendant contends that the court, in its charge to the jury, erred in three respects: first, in charging that as a matter of law the funds in the escrow account belonged to the Bank, and in refusing to submit to the jury the question of whether such funds ever became Bank funds; second, in charging that the government need not prove any monetary loss to the Bank as a result of the defendant's conduct, and in refusing to give the contrary in-

structions requested by the defendant; and third, in charging that it was not necessary for the government to show a specific intent on the part of the defendant to injure or defraud the Bank, and in refusing to give the contrary instructions requested by the defendant.

■■ At the outset, the government argues that the defendant may not raise the points he now asserts on appeal because he did not object to the charge or state his grounds for objection as required by Fed.R.Crim.P. 30. This contention is wholly without merit. The purpose of this requirement of Rule 30, as of the similar requirement of Fed.R. Civ.P. 51, is to bring to the attention of the trial court errors or omissions in its charge, so that they may be corrected before the case is submitted to the jury. 4 Barron, Federal Practice and Procedure § 2235 (Rules ed. 1951); cf. Broderick v. Harvey, 252 F.2d 274, 276–277 (1st Cir. 1958). A review of the record satisfies us that the defendant in this case did all that could reasonably be expected to make the court aware of his theory of the case and to preserve his rights with respect to the issues now before us. The requirements of Rule 30 were satisfied. United States v. Currens, 290 F.2d 751, 759 (3d Cir. 1961).

■ We also pass quickly over the defendant's contentions that the court erred in instructing the jury, in substance, that no loss to the Bank had to be shown and that no intent to injure or defraud the Bank was required for a conviction under Section 656. With respect to the first point, the court charged the jury:

"It should make no difference in your decision in this case whether the bank lost any money or not, or whether the estate lost any money or not. That is not the test. The test is whether or not the bank was defrauded of something, defrauded of its right to have custody of these

---

3. The six checks, which were received in evidence, were all endorsed by the Bank, "Credit to the account of the within named payee. Absence of endorsement guaranteed by the Everett National Bank 53–210 Everett, Mass. 53–210."

funds, the right of the bank to make its own decisions as to how these funds were to be used, and to act under other regulations promulgated in protection of banking as such in the national field.

"So that I charge you as a matter of law that the fact that there may not have been a loss here, or may have been a profit, has nothing to do with whether or not this defendant violated the Act." [4]

We find no error in this instruction. It is well settled that a permanent loss to the Bank is not an element of the crime defined in 18 U.S.C. § 656, and that subsequent restoration of the funds has no bearing on the offense. Indeed, it is not necessary that the Bank have suffered any loss at all. Mulloney v. United States, 79 F.2d 566, 581 (1st Cir. 1935), cert. denied, 296 U.S. 658, 56 S.Ct. 383, 80 L.Ed. 468 (1936); Rakes v. United States, 169 F.2d 739, 743 (4th Cir. 1948), cert. denied, 335 U.S. 826, 69 S.Ct. 51, 93 L.Ed. 380 (1948).

 As to the defendant's second point, both parties agree that an intent to injure or defraud the Bank is an element of the offense with which the defendant was charged, despite the omission of these words in the 1948 revision of Title 18. Seals v. United States, 221 F.2d 243, 245 (8th Cir. 1955). But we cannot agree with the defendant's interpretation of the court's charge as not requiring a finding of the requisite intent. The court charged:

"Now, the funds covered by the statute must have been entrusted to the bank, or to an agent of the bank. And in addition to these elements, misapplication of funds entrusted to the bank or its agent, to find the defendant guilty you must find that he misapplied the funds with an intent to injure or defraud the bank.

"Now, intent, of course, is a mental process, and you can't see inside a man's mind. More or less, you can ascertain his intent by his conduct, and the results of his conduct. The intent to injure or defraud must not necessarily have been the purpose for the doing of the act, as long as the natural result of that conduct would be to injure or defraud the bank."

In our view, this language clearly required the jury to find an intent to injure or defraud the Bank in order to convict the defendant. We understand the court's statement that the intent to injure or defraud must not necessarily have been the "purpose" for the doing of the act to mean no more than that the injuring or defrauding of the Bank need not have been the motive for the defendant's acts. This proposition is altogether consistent with the holding of this court in Mulloney v. United States, supra, 79 F.2d at 584, approving the language of the Sixth Circuit in Galbreath v. United States, 257 F. 648, 656 (6th Cir. 1918):

"An intent to injure or defraud, as contemplated by the statute, is not inconsistent with a desire for the ultimate success and welfare of the bank. It may, within the meaning of the law, result from an unlawful act voluntarily done, the natural tendency of which may have been to injure the bank. A wrongful misapplication of funds, even if made in the hope or belief that the bank's welfare would ultimately be promoted, is none the less a violation of the statute, if the necessary effect is

---

4. The court also refused the contrary instructions requested by the defendant as follows:

"13. Unless you find that the Everett National Bank lost the $286,069.23 or part of it, you must acquit the Defendant John F. Golden, Jr.

"14. If you find that the Everett National Bank did not lose the $286,069.23

or any part of it at any time, you must acquit the Defendant."

Similarly, the court during the trial excluded evidence offered by the defendant to show that neither the Bank nor the O. G. Kelley Estate had suffered any loss because of the defendant's conduct

or may be to injure or defraud the bank. Such is the well-settled law." We conclude that the court below charged sufficiently on the question of intent.

■ The major issue raised by the defendant on this appeal arises from his contention that the court erred in charging the jury that as a matter of law the funds in the escrow account belonged to the Bank, and in refusing to submit to the jury the question of the capacity in which the defendant received them.

The defendant's theory throughout the trial was that he received the insurance checks in his individual capacity, and not as an agent for the Bank, and that therefore the funds never became Bank funds at all. Accordingly, the defendant requested the court to instruct the jury that:

"5. If you find that the checks from the New York Life Insurance Company were turned over to the Defendant with the understanding that they were to be kept separate from the Oliver G. Kelley Estate accounts at the Bank, you must acquit the Defendant, John F. Golden, Jr.

"6. A bank president does not act in the capacity of bank president or for the bank at all times or in everything he does. A bank president may act in his own or any other capacity in receiving, holding or using funds belonging to others. When a bank president receives funds in an individual capacity and deposits them in his own bank in his own name, holding the funds for others, such funds do not become funds belonging to the bank within the meaning of the provision of the National Banking Act involved in this case.

"7. If you find that the persons in charge of the Oliver G. Kelley Company instructed Mr. Golden not to deposit the proceeds of the insurance checks to the account of the Estate of Oliver G. Kelley in the Everett National Bank, and they were not so deposited then they were not funds of the bank and the De-

fendant is not guilty regardless of what was done with the funds thereafter.

"8. If you find that the Defendant was given the funds as escrow agent for Oliver G. Kelley Company, Resisto Pipe & Valve Company and H. T. Stearns Lumber Company, and he deposited them in the Bank as such escrow agent, then they did not become funds of the Bank and you must find the Defendant not guilty."

The court refused to give these requested instructions, and instead charged the jury that the defendant "plainly was the agent of the bank in dealing with the checks"; that "(t)he bank was entitled to a joint title to these funds"; and that "when Golden deposited these funds and opened these accounts in the name of John Golden, Jr., that the bank from that moment on had possession of the funds of the O. G. Kelley Estate." Despite some ambiguity in other parts of the charge, it is clear from the record that throughout the trial the court acted upon the premise that title to the insurance checks was vested from the outset in the Bank as a co-administrator of the O. G. Kelley Estate, that in receiving and depositing the checks the defendant was at all times acting as an agent for the Bank, and that the funds in the escrow account were Bank funds as a matter of law. This was error.

■ We cannot agree with the trial court that the mere fact the Bank was a co-administrator of the O. G. Kelley Estate was sufficient to entitle the Bank to the insurance checks. It is true that the Bank, together with Mr. and Mrs. Burke, as the Massachusetts administrators of the O. G. Kelley Estate, acquired joint title to all assets of the estate in Massachusetts. But it is by no means clear on the record before us that the insurance proceeds, which were derived from "key man" policies on the life of an officer of the O. G. Kelley Company in Tennessee, were assets of the O. G. Kelley Estate in Massachusetts, or that the Massachusetts administrators ever acquired title there-

to. In fact, the checks payable to the Resisto Pipe and Valve Company and to the A. T. Stearns Lumber Company, both corporations, clearly belonged to the corporations and were not assets of the estate, even though the stock of the corporations may have been part of the estate. Knitting Machines Corp. v. Hayward Hosiery Co., 95 F.Supp. 510, 512 (D.Mass.1950); Leventhal v. Atlantic Finance Corp., 316 Mass. 194, 198, 55 N.E.2d 20, 22–23, 154 A.L.R. 260 (1944); 1 Fletcher, Corporations § 31 (Perm. ed. 1931). As to the checks payable to the O. G. Kelley Company, the uncontroverted testimony is that there was substantial doubt in the minds of those present at the March 10, 1959 meeting as to whether they should be administered as part of the Massachusetts estate or as part of the Tennessee estate, and that all agreed they were to be held by the defendant pending a determination as to whether or not they should be delivered to the ancillary administrators in Tennessee. Because of these doubts as to the status of the checks, all those present at the March 10 meeting agreed that they were to be held by the defendant apart from the general funds of the estate on deposit with the Bank. On this record, we cannot say that the government has established that as a matter of law title to the insurance checks vested in the bank solely because of the fact that it was a co-administrator of the Massachusetts estate.

There can be no question that if in fact the defendant received the insurance checks as an agent for the Bank, they became Bank funds. However, it does not follow that the defendant could receive the checks only in his official capacity. Funds do not become bank funds solely because one who is an officer of the bank receives them, irrespective of the capacity in which he does so, and when a bank officer holds funds in a fiduciary capacity for others, they do not become funds of the bank, even though he deposits them in his own bank. Hudson v. United States, 55 F.2d 591 (8th Cir. 1932); cf. Schram v. Burt, 111 F.2d 557, 564 (6th Cir. 1940); Great American Indemnity Co. v. First Nat'l Bank, 100 F.2d 763, 766 (10th Cir. 1939). The defendant here correctly points out that because of the nature of the legal issue he raises, we must, for the purposes of this appeal, assume that the jury was entitled to, and did, believe the defendant's testimony that the checks were in fact turned over to him in his individual capacity, and not for the Bank. In our view this issue of fact, which was the crucial issue of fact at the trial, should have been submitted for determination by the jury, and the district court committed prejudicial error by failing to do so.[5]

A judgment will be entered vacating the judgment of the district court, setting aside the verdict and remanding the case to that court for a new trial.

---

5. Although not necessary to our decision, we deem it appropriate to note that the failure of the trial court to submit to the jury the question of the capacity in which the defendant received the insurance checks permitted the jury to convict the defendant upon a basis which was wholly inconsistent with the charges contained in the indictment. Each count of the indictment alleged that the checks were received by the defendant "as president and agent" of the Bank, that the deposit in the escrow account was made by the defendant in the same capacity, and that the unlawful misappropriation occurred when the defendant thereafter withdrew funds from the escrow account and made the investments described. The defendant here correctly points out that even if the insurance checks belonged to the Bank merely because the Bank was a co-administrator of the O. G. Kelley Estate, proof that the defendant received and deposited the checks as an agent for the Bank was essential to his conviction under the indictment.