UNITED STATES of America, Appellee,

v.

**Roger Charles ST. GERMAIN,**
**Defendant-Appellant.**

No. 81–1551.

United States Court of Appeals,
First Circuit.

Argued April 6, 1982.
Decided June 22, 1982.

Marshall D. Stein, Boston, Mass., with whom Hale, Sanderson, Byrnes & Morton, Francis J. Flynn, Jr., and Parker, Coulter, Daley & White, Boston, Mass., were on brief, for appellant.

Janis M. Berry, Sp. Atty., U. S. Dept. of Justice, Boston, Mass., with whom William F. Weld, U. S. Atty., and Jeremiah T. O'Sullivan, Sp. Atty., U. S. Dept. of Justice, Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

Defendant-appellant, Roger Charles St. Germain, an officer of the Shawmut Bank of Boston, appeals a jury verdict finding him guilty of misapplying bank funds, 18 U.S.C. § 656,[1] and causing false entries to be made in the records of the bank, 18 U.S.C. § 1005.[2]

St. Germain's defense was unusual to the point of being bizarre; he claimed that the transactions initiated and carried out by him were done because, upset about the computer security system at the bank, he had set out to show how vulnerable it was. The transactions can be summarized as follows. On March 16, 1981, St. Germain opened an account in the name of David Carpenter, a nonexistent person. At the same time, the defendant, by means of a debit ticket, transferred $10,000 from the Fidelity Daily Income Trust account[3] at the Shawmut to the account of the fictitious David Carpenter. The next day, March 17, the defendant, posing as David Carpenter, went to a Shawmut branch and attempted to obtain the $10,000 in the form of $9,500 in traveler's checks and $500 in cash. The bank employee however, became suspicious and put the account on a warning status so that it would not be used for transactions. She also contacted Shawmut's security office. Defendant returned to the main bank office and again attempted to purchase $10,000 in traveler's checks against the Carpenter account. When the account balance was checked, however, it was zero; the Fidelity Trust debit had apparently not yet been made. So, for the second time, defendant was unable to turn his scheme (or test) into negotiable assets.

Undeterred and evidently still not impressed with the bank's security system, the defendant tried another tack. Sometime prior to March 17, defendant had talked with a Shawmut investment officer, Michael Briggs, about how to buy a negotiable

---

1. 18 U.S.C. § 656 provides in pertinent part:
   Whoever, being an officer, director, agent or employee of, or connected in any capacity with any national bank or insured bank . . . embezzles, abstracts, purloins or willfully misapplies any of the money, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody and care of any such agent, officer, director, employee or receiver, shall [be guilty of an offense].

2. 18 U.S.C. § 1005 provides in pertinent part:
   Whoever, being an officer, director, agent or employee of any . . . national bank or insured bank . . . makes any false entry in

any book, report, or statement of such bank with intent to injure or defraud such bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of Federal Reserve System [shall be guilty of an offense].

3. The assets of the Fidelity Daily Income Trust account are in excess of three billion dollars.

bond. During this conversation, the defendant had told Briggs that his father-in-law, who he said was named David Carpenter, wanted to buy certain securities through the Shawmut so as to "have a nest egg." The defendant approached Briggs on March 17 and told him that $10,000 had been deposited in the account of his father-in-law, David Carpenter, and asked Briggs to purchase a $10,000 negotiable treasury bond. This was done at a cost of $9,760.84 with funds transferred from the fictitious Carpenter account.[4] The defendant inquired of Briggs how he could obtain possession of the bond and about the procedure for selling it.

Two days later, on March 19, 1981, the defendant was arrested at the offices of the bank. After being advised of his rights, defendant gave a detailed statement of what he had done. He also told the F.B.I. that his actions were motivated solely to test the bank's security procedures. We note parenthetically that such procedures were adequate to detect and thwart defendant's scheme, bogus or real.

Appellant's brief and oral argument are based on the argument that the court's charge on intent was based on *Golden v. United States*, 318 F.2d 357 (1st Cir. 1963),[5] that *Golden* is no longer the law and should be overruled. We have serious doubts that the court's charge was based on *Golden*, but do not reach the merits of the appeal because of defendant's failure to comply with Federal Rule of Criminal Procedure 30.[6]

There are three sets of instructions to consider: the one that the court discussed with counsel in chambers, the one actually given, and a supplementary instruction given in response to jury questions. Prior to instructing the jury, the court went over its proposed charge in chambers with counsel. During the course of the discussion, defense counsel suggested "we should dwell upon the importance of showing some intent to benefit either himself or another as going right to the issue of criminal intent." The court then stated: "But that's precisely what the cases say you don't have to show." The court had previously mentioned *Golden* and a Rhode Island case, *Giragosian* [, 107 R.I. 657, 270 A.2d 921]. Defense counsel did not rely on any cases by name during this discussion. His comments and objections were based on generalities as to intent. At the conclusion of the conference, the court stated:

> I will see if I can refine it some to try to make it more clear, but I do not agree with your statement of the law, Mr. Flynn, that it is necessary to show that he intended to benefit himself or someone else. I do not believe that to be an accurate statement of the law from what I've read.
>
> Now, is there anything else?

It is evident that defense counsel's chamber suggestion did persuade the court to change the instructions it had originally drafted. The *Golden* rule was not given to

---

4. There is no explanation of why the warning status of the account did not short-circuit this transaction.

5. In *Golden v. United States*, we held that
   "[a] wrongful misapplication of funds, even if made in the hope or belief that the bank's welfare would ultimately be promoted, is none the less a violation of the statute, if the necessary effect is or may be to injure or defraud the bank. Such is the well-settled law."
   *Golden v. United States*, 318 F.2d 357, 361–62 (1st Cir. 1963), quoting *Galbreath v. United States*, 257 F. 648, 656 (6th Cir. 1918).

6. Fed.R.Crim.P. 30 provides:
   At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury.

the jury; the court specifically instructed that the fourth element that the government had to prove under Count I was that the defendant committed the acts "knowingly, willfully, unlawfully and with intent to injure or defraud the bank."

At the bench conference following the charge, defense counsel made an irrelevant objection and then said, "Other than that, your Honor, and I simply rely on upon [*sic*] the points I raised this morning at the conference." The court then stated: "I changed it from this morning. I decided, Miss Berry [the prosecutrix], that to talk about—to use the language of the Gordon [*sic*] case in the context of the facts of this case is effectively directing a verdict of guilty. So I didn't do it." Defense counsel said nothing after this statement by the court.

After the jury had been deliberating for some time, it sent three questions to the court, only one of which is relevant for our purposes. The jury asked: "Will you please re-review the indictment with the jury along with the two federal statutes that apply, with particular emphasis "willfully, unlawfully and with intent." The court informed counsel: "I think that all I can do is to go over the charge, over those aspects of the charge again, and I will do it in much the same way as I gave them originally." Counsel agreed that this was the proper way to proceed. On Count I the pertinent part of the supplemental charge was:

> Now, I also told you that the intent to injure or defraud means both to intend to inflict injury or intend to do something, the necessary effect of which is to injure the bank.
>
> That is, it is not necessary to show that the defendant had it in his mind to harm the bank. It is not necessary that his purpose was to injure the bank. It is necessary to show that that would be the effect of what he did.

In discussing intent with regard to Count II, the court said:

I told you with respect to this that willfully here means the same thing that it did in the context of Count I, namely, that there was—that the government must prove that the defendant had an intent to violate the law, *that he had an intent to deceive or cheat the bank.* (emphasis added).

No objections were made by defense counsel to the supplementary charge.

It is clear that the charge on intent under Count I in the supplemental charge was different from what had been given in the main charge. It also seems evident that the intent instruction on Count II in the supplemental charge contradicted the intent instruction in Count I, although the court said "willfully here means the same thing that it did in the context of Count I." The reasonable conclusion is that the court misspoke in its supplementary instructions on Count I without realizing it.[7] This, of course, is one of the reasons for Rule 30. A simple objection would have brought the contradictions to the attention of the court and the matter could have been clarified. Defense counsel cannot in the face of Rule 30 now mount a full-scale attack on a portion of the charge to which no objection was taken.

It is well-established that absent "plain error" counsel's failure to object to a portion of the charge in conformity with Federal Rule of Criminal Procedure 30 results in a loss of consideration of it on appeal. *United States v. Ariza-Ibarra*, 651 F.2d 2, 15 (1st Cir.), *cert. denied,* 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981); *United States v. Previte*, 648 F.2d 73, 81 (1st Cir. 1981); *United States v. Indorato*, 628 F.2d 711, 721 (1st Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476 (1980).

We find no "plain error" here for three reasons. First, we are not sure that the intent standard enunciated in *Golden* is wrong and should be overruled. Secondly, it is not clear that, even in the supplementary charge on Count I, the court was fol-

---

**7.** There is another but much less likely explanation: that the word "not" was mistakenly inserted in the supplementary charge in two places by the court reporter. This would explain defense counsel's failure to object.

lowing the *Golden* rule. And finally, the defendant obtained in essence the instruction he wanted in the main charge and in the Count II section of the supplementary charge. This was not the situation, even assuming that *Golden*'s time has passed, where the court clearly and unmistakably gave an incorrect instruction. The three sets of instructions may have been confusing, but there was not "plain error."

*Affirmed.*