UNITED STATES of America,
Plaintiff-Appellee,

v.

D. Wayne FOSTER and Elmore Harmon,
Defendants-Appellants.

Nos. 77-5079, 77-5080.

United States Court of Appeals,
Sixth Circuit.

Argued June 17, 1977.

Decided Dec. 5, 1977.

Edward P. A. Smith, McDonald, Kuhn, Smith, Gandy, Miller & Tait, Memphis, Tenn., for defendants-appellants.

W. J. Michael Cody, U. S. Atty., Glen G. Reid, Jr., Asst. U. S. Atty., Memphis, Tenn., for plaintiff-appellee in No. 77–5079.

Thomas F. Turley, Jr., U. S. Atty., Glen G. Reid, Jr., Asst. U. S. Atty., Memphis, Tenn., for plaintiff-appellee in No. 77–5080.

Before PHILLIPS, Chief Judge, EDWARDS, Circuit Judge, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This is an appeal by D. Wayne Foster and Elmore Harmon, appellants, from their convictions in the United States District Court for the Western District of Tennessee, Western Division on several counts of a multiple count indictment charging them with violations of various sections of the federal banking laws. There were thirty-six counts in the indictment.

Thomas W. Murrey, officer of the Union Planters National Bank of Memphis, Tennessee, and Foster and Harmon, were jointly indicted on count twelve and Murrey was not indicted on counts twenty-five and twenty-eight. The trial judge dismissed count thirty-five and the jury returned not guilty verdicts on counts five, six, seven, eight, ten, sixteen, twenty-five, thirty and thirty-two. Convictions were had on all other counts of the indictment. Barr and Murrey voluntarily dismissed their appeals before submission to the Court and they are not now before us.

Briefly, the facts are that Foster and Harmon were partners in the business of constructing and operating franchised motels. They made Barr and Murrey partners in these ventures and made arrangements with them for the approval of loans from the bank. Foster and Harmon received loans from the Union Planters National Bank in excess of $17,000,000. Barr and Murrey each received, as a result of these loans, $117,000 in cash, $66,900 in tax credits, plus some lesser amounts for other things.

Foster, Harmon, Barr and Murrey were defendants in the District Court and will be so designated here.

Count one of the indictment charged each of the four defendants with conspiracy in violation of Section 371, Title 18, U.S.C.,[1] " * * * to commit certain offenses against the United States of America, among them the following:

"Foster and Harmon aided, abetted, counseled * * * and caused Barr and Murrey, employees of the Bank, to stipulate for, receive, consent and agree to receive fees * * * and things of val-

---

[1]. See Appendix for pertinent part of statutes involved.

ue, otherwise than as provided by law, from Foster and Harmon and their enterprises for Barr and Murrey procuring and endeavoring to procure from the Bank loans and extensions and renewals thereof and other extensions of credit for Foster and Harmon and their enterprises, in violation of Title 18, United States Code, Section 215 and Section 2." [1]

It is alleged that in furtherance of the conspiracy the bank, between April 1972 and December 1974, made to Foster and Harmon, for their various enterprises, approximately 193 loans aggregating approximately $20,000,000, and 289 renewals and extensions. These loans in nearly every instance were made on the approval of either Barr or Murrey. During substantially the same period, Barr and Murrey were paid or received from Foster and Harmon, in cash or its equivalent, $117,500. The evidence supported these allegations.

We consider first count one of the indictment.

█ It is claimed on behalf of the defendants that there can be no charge of conspiracy to violate Title 18, Section 215, U.S.C. as a matter of law. The basis of this claim is that such a conspiracy is in conflict with the Wharton Rule.

This rule is,

"an exception to the general principle that a conspiracy and the substantive offense that is its immediate end are discrete crimes for which separate sanctions may be imposed." [2]

\* \* \* \* \* \*

(The rule) "owes its name to Francis Wharton, whose treatise on criminal law identified the doctrine and its fundamental rationale." [2]

\* \* \* \* \* \*

In the current edition of Wharton, it is defined,

"An agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." (Note 5) [2]

The four defendants were all indicted in count one of the indictment. They not only relied upon themselves and the agreements between them to carry out the purposes of the conspiracy but they gave false credit information to other members of the bank and they gave credit information to outsiders, all of which advanced the purposes of the conspiracy. This raised the issue of the third party exception to the Wharton Rule. See *Iannelli v. United States, supra,* p. 775, 95 S.Ct. 1284; *Gebardi v. United States,* 287 U.S. 112, 122 n. 6, 53 S.Ct. 35, 77 L.Ed. 206 (1932); *United States v. Finazzo,* 407 F.Supp. 1127, 1130 (E.D.Mich.1975).

In *Iannelli, supra,* 420 U.S. p. 782, 95 S.Ct. p. 1292–93, the Court said,

"This Court's prior decisions indicate that the broadly formulated Wharton's Rule does not rest on principles of double jeopardy. (Citations omitted.) Instead, it has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary. The classic Wharton's Rule offenses—adultery, incest, bigamy, duelling—are crimes that are characterized by the general congruence of the agreement and the completed substantive offense. The parties to the agreement are the only persons who participate in commission of the substantive offense, and the immediate consequences of the crime rest on the parties themselves rather than on society at large. (Citation omitted.) Finally, the agreement that attends the substantive offense does not appear likely to pose the distinct kinds of threats to society that the law of conspiracy seeks to avert. It cannot, for example, readily be assumed that an agreement to commit an offense of this nature will produce agreements to engage in a more general pattern of criminal conduct."

2. NOTE: *Iannelli v. United States,* 420 U.S. 770, 771–773, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975).

If there is any part of the national economy that society in general is interested in, it is the banks. The concern is that the banks be operated honestly and without failures. Any one living in the early thirties can testify how demoralized the country was when banks all over the country fell like clay pidgeons. While, fortunately, the Union Planters National Bank, involved here, did not lose any money, the manipulations of the defendants could have caused its failure.

We conclude that the type of conduct engaged in by these defendants is the type of conduct the crime of conspiracy is designed to reach, separate and apart from any substantive violations that might be committed.

Finally, the defendants, at the end of their argument on count one, request that either count one *or* the substantive counts of the indictment dealing with the transactions described as overt acts in the conspiracy count be dismissed. We affirm the convictions of Foster and Harmon under count one of the indictment and will consider the substantive counts later in this opinion.

The defendants were each sentenced to five years imprisonment on count one to run concurrent with sentences on other counts.

■ The defendants Foster and Harmon were convicted on counts eleven, twelve, fourteen, fifteen, eighteen, twenty-four, twenty-eight and thirty-four, all of which charged substantive offenses in violation of Title 18, Section 215, U.S.C. It is claimed on behalf of the defendants that they have received dual punishment by being sentenced on both the substantive counts and the conspiracy count. There is ample evidence to support the convictions on these counts. The question thus presented is whether the convictions can stand on both the substantive counts and the conspiracy count.

In *Pereira v. United States,* 347 U.S. 1, 11, 74 S.Ct. 358, 364, 98 L.Ed. 435 (1954), the Court said in an opinion by Chief Justice Warren,

"It is·settled law in this country that the commission of a substantive offense and a conspiracy to commit it are separate and distinct crimes, and a plea of double jeopardy is no defense to a conviction for both. See *Pinkerton v. United States,* 328 U.S. 640, 643–644, [66 S.Ct. 1180, 1181–82] 70 L.Ed. 1489 and cases cited therein. *Only if the substantive offense and the conspiracy are identical does a conviction for both constitute double jeopardy.* (Emphasis added) Cf. *Gavieres v. United States,* 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489."

We said in *United States v. Austin,* 529 F.2d 559, 562 (6th Cir. 1976),

"Yet it is clear that the Fifth Amendment comes into play to prohibit double punishments where the substantive and conspiracy counts of an indictment charge essentially the same offense. (Citations omitted) * * * *As the Supreme Court has held, whenever it appears that the proof of one offense proves every essential element of another growing out of the same act, the Fifth Amendment limits the punishment to a single act.*" (Emphasis added)

Keeping in mind the law as above stated, we are confronted with the question of whether the conspiracy in count one could be proved without proof of the offenses charged in the counts under consideration.

Counts eleven, twelve, fourteen, fifteen, eighteen, twenty-four, twenty-eight and thirty-four, in question here, each charge a separate offense of consenting and agreeing to receive things of value otherwise than as provided by law. For example, count eleven charges that defendants Foster and Harmon caused, aided, abetted, counseled and induced defendants Barr and Murrey, who were employees of the Union Planters National Bank, to knowingly stipulate for, consent and agree to receive things of value from the defendants Foster and Harmon, otherwise as provided by law, for procuring and endeavoring to procure extensions of credit for defendants, Foster and Harmon, to wit, $12,500 for each for Barr and Mur-

rey, in violation of Title 18, Section 215, U.S.C.

The acts which constitute the offenses in the counts now before us, are alleged as overt acts in the indictment in overt acts numbered three, four and five. The indictment contains twenty-three numbered overt acts, some of them having additional lettered parts. All of these overt acts involve some, one or all of the defendants in the commission of acts or transactions in furtherance of the expressed objects of the conspiracy, alleged in count one of the indictment.

We conclude that the defendants, Foster and Harmon, before us on this appeal, could have been convicted of the conspiracy in count one of the indictment without any evidence of the offenses charged in counts eleven, twelve, fourteen, fifteen, eighteen, twenty-four, twenty-eight and thirty-four.

The judgment of conviction of these counts is AFFIRMED.

The defendants were each sentenced to one year imprisonment on each count, the sentences to run concurrent with each other and with sentences on other counts of the indictment.

■ The defendants, Foster and Harmon, claim that counts seventeen, nineteen, twenty-three, thirty-one and thirty-three of the indictment charging violations of Section 656, Title 18, U.S.C.,[3] should be dismissed and the convictions thereon set aside for the reason that there was no misapplication of bank funds· as a matter of law.

In count seventeen of the indictment, defendants Foster and Harmon were charged with aiding, abetting and inducing defendants Barr and Murrey, employees of the Union Planters National Bank of Memphis, Tennessee, an insured bank, wilfully and knowingly to embezzle and convert and to wilfully misapply, and cause to be embezzled, converted and misapplied, the monies and funds of said bank, in that, the defendants (Barr and Murrey), procured and endeavored to procure, a loan in the amount of $250,000 from said bank to Travspring

Investment, a partnership, for the purchase of real estate and, thereafter, the defendants, "Foster, Harmon, Barr and Murrey," made and caused to be made, cash payments of $12,500 each to the defendants (Barr and Murrey) from said loan proceeds, in violation of Title 18, U.S.C., Section 656 and Section 2.

Count nineteen was similar to seventeen except that it was for a loan of $300,000 to Travclev Investment for purchase of real estate and Barr and Murrey received $10,000 each.

Count twenty-three was similar to the previous two counts except it was for a loan of $250,000 to Air-Park Investments for purchase of real estate and Barr and Murrey each received $10,000.

Count thirty-one was similar to the previous counts except it was for a loan of $270,000 to Travjack Investment for the purchase of real estate and Barr and Murrey each received $20,000.

Count thirty-three was likewise similar to the other counts except it was for a loan of $45,000 to Travind, a partnership and Barr and Murrey each received $25,000, partially from said loan proceeds.

For pertinent provisions of Section 656, see appendix. The essence of the offenses charged in these counts is the misapplication of bank funds.

The defendants argue that there could be no misapplication of funds here as a matter of law for the reason that loans were made to solvent borrowers, the borrowers agreed to pay the loans and borrowers then paid a portion of the loan proceeds to defendants Barr and Murrey. In support of this proposition they cite *United States v. Gens,* 493 F.2d 216 (1st Cir. 1974).

Briefly, the facts of that case are: Gens was a director of the bank involved. He borrowed his legal limit from the bank and then got third parties to borrow an additional $235,000, which they, in turn, loaned back to Gens. The bank officers had knowledge that the reloan would be made.

**3.** See Appendix for pertinent part of statute.

Gens and other bank officers were convicted under Section 656 of misapplication of funds of the bank.

The court held that this was not misapplication of funds in violation of Section 656 for the reason that the bank made a loan to solvent borrowers, the third persons, and they, in turn, made a loan to Gens. The third persons were at all times responsible for the first loan.

The charges in the counts now before us can be distinguished from the *Gens* case on their facts. Barr and Murrey were officers of the bank who had authority to approve loans. They had entered into an arrangement with Foster and Harmon to approve loans for their enterprises. For this Foster and Harmon made them partners in their business. There is no evidence that Barr and Murrey invested any capital in this business. For these arrangements all of the defendants were indicted and convicted of conspiracy[4] to wrong and defraud the bank.

Unlike Barr and Murrey in this case, the defendants in *Gens* were not recipients of kickbacks from loans which they had approved in accordance with a previous arrangement. What Barr and Murrey did was to approve loans from which they knew they would receive a portion in return. It was necessary therefore that the loans be made for a greater amount than was required for the purpose of the loan. This we consider as evidence of misapplication of bank funds. The defendants argue that these payments were withdrawals from partnership funds. As to question of intent to injure and defraud, see *United States v. Tokoph,* 514 F.2d 597, 603–604 (10th Cir. 1975).[5] Thus, questions of facts were presented which were submitted to the jury under proper instructions of the trial judge. The jury returned a verdict of guilty and we affirm.

The defendants were each sentenced to five years imprisonment on each count, the sentences to run concurrent with each other, and with other sentences under other counts of the indictment.

 Further claims are made by the defendants that counts two, three, four, nine, thirteen, twenty, twenty-one, twenty-two, twenty-nine and thirty-six, charging violation of Section 1014, Title 18, U.S.C., should be dismissed for the reason that no false statements were made within the meaning of this Section as a matter of law.

The essence of the above counts two through twenty-nine is that the defendants wilfully made false statements in documents submitted to the bank for the purpose of influencing the bank in approving extensions of credit and renewals of loans. The documents purported to authorize partnerships to open deposit accounts and procure loans. The false statements in these documents are that defendants Foster and Harmon were the sole owners of certain partnerships whereas, in fact, Barr and Murrey were joint owners of said partnerships with Foster and Harmon.

The gist of count thirty-six is that, in the partnerships involved, only defendants Foster and Harmon and Brown, Hutchinson and Hall[6] had partner's capital accounts with the partnerships, whereas, as a fact, the defendants Barr and Murrey also had partner's capital accounts in said partnerships.

It is undisputed that at a time during the transactions between Foster and Harmon and the bank, Barr and Murrey were partners of Foster and Harmon.

In the above numbered counts two to twenty-nine, the evidence is that the de-

---

4. Count one of indictment.

5. See also *United States v. Braverman,* 522 F.2d 218, 220–221 (7th Cir. 1975), *cert. den.* 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975); *United States v. Acree,* 466 F.2d 1114 (10th Cir. 1972), *cert. den.* 410 U.S. 913, 93 S.Ct. 962, 35 L.Ed.2d 278 (1973); *Golden v. United States,* 318 F.2d 357, 360–361 (1st Cir. 1953); *Logsdon*

*v. United States,* 253 F.2d 12, 15 (6th Cir. 1958); *Galbreath v. United States,* 257 F. 648, 656 (6th Cir. 1918).

6. Brown, Hutchinson and Hall were not defendants in this action and, thus, not now before this Court.

fendants provided form authorizations to open bank accounts and to procure loans for various partnerships. These forms provided a place for the persons opening the account to state the names of the partners. The names of Barr and Murrey were omitted.

The evidence on count thirty-six is that, on November 25, 1974, the defendants submitted financial statements of various partnerships reflecting capital accounts as of July, 1974, and in one instance October, 1974. It is alleged that these statements were submitted for the purpose of influencing the bank in approving extensions of credit and renewals of loans. These financial statements did not include the names of Barr and Murrey as partners along with defendants Foster and Harmon and others.

It is claimed on behalf of defendants that all of these documents clearly stated in capital letters "Restricted to Internal Management use Only." It was explained by Blaine Olson, a C.P.A., witness for the companies (partnerships), that with this restriction, the statements should not have gone to a lender such as a bank. In furtherance of this claim, the defendants argue that the bank should have known that these statements were unaudited and should not have been relied on by anyone outside of management.

Mr. Olson further explained that, although Barr and Murrey had been in these partnerships with Foster and Harmon, they had agreed in the summer of 1974 that their partnership interests ended as of the end of 1973. This information, it was claimed, was for management only and not outsiders.

It is also claimed that to support a violation of Section 1014, it must be shown that the statement is material and has the capacity to influence the bank.[7]

It is further claimed that these statements were furnished to the bank after Murrey had left the bank and when no new loans had been made. It is also said that these authorizations to open checking accounts are lacking in any proof that they had the capacity to influence the bank in granting loans or extending credit.

These claims raise questions of fact which were submitted to the jury upon the evidence and proper instructions to the jury.

The jury was instructed as follows:

"In Count Two it is alleged that on or about October 2, 1972, the defendants Foster and Harmon, aided and abetted by the defendants Barr and Murrey, knowingly and wilfully made and caused to be made a material false statement in a document submitted to the bank for the purpose of influencing the bank in approving the extensions of credit and renewals, the document being titled as aforesaid, in that it was stated and represented that the defendants, Foster and Harmon, owned the partnership of Ramlafay entirely whereas in truth and in fact, Ramlafay was a partnership owned by the defendants Foster, Harmon, Barr and Murrey.

* * * * * *

"In order to find the defendant Foster or the defendant Harmon guilty under this section, it is necessary that you find that they acted knowingly and willfully, that is, acted with criminal intent. It is further necessary that it be shown that the involved document contained a false statement. It is necessary that it be shown that the statement was false at the time Foster and Harmon submitted the document to the bank, that is, it is necessary that it be shown that Barr and Murrey were partners in the partnership at that time.

* * * * * *

"It is further necessary that it be shown that the statement was a material statement in that it had the capacity to influence the bank. It is not necessary, however, to show that the alleged false statement actually influenced the bank, that is, it is not necessary to show that the bank actually relied on the alleged false statement."

---

7. For pertinent parts of Section 1014, see Appendix. See also *United States v. Braverman,* 522 F.2d 218 (7th Cir. 1975), *cert. den.* 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975).

Upon the evidence and under the instructions of the trial judge, the jury found the defendants guilty in each of the above numbered counts. We AFFIRM.

Each of the defendants was sentenced to two years imprisonment on each count, the sentences to be concurrent with each other and with other sentences under the counts of the indictment.

Another claim of the defendants is that counts twenty-six and twenty-seven of the indictment charging violations of Section 1005, Title 18, U.S.C.[8] should be dismissed for the reason that there were no false entries within the meaning of this section as a matter of law.

These counts charge that the defendants made false statements in an *Inter-Office Memo* for the purpose of deceiving the directors and officers of the bank and the Comptroller of the currency as to the ownership of certain partnerships. The false statements were that Foster and Harmon were the owners, omitting the names of Barr and Murrey, who were also owners.

The statute used the language "* * * any false entry in any *book, report,* or *statement* of such bank * * *" (Emphasis added). It is not denied that the false entries appear in the Inter-Office Memo. The claim is that "book, report or statement" is not inclusive of Inter-Office Memo, that they were not "entries" for the reason that they were not made in formal financial accounting records or journals.

We cannot accept this limited interpretation of the language of the statute nor did the trial judge in his instructions to the jury. He said,

"Accordingly, I charge you that in order to find the defendant Murrey guilty under this section, it is necessary that you find that he made a false entry in a report of the bank and that he made such entry with intent to deceive * * *"

This left in issue only whether a false entry was made with intent to deceive. We do not find that defendants raised this issue of interpretation at the time of trial.

Defendants cite in support of their argument, *United States v. Morse,* 161 F. 429 (Circuit Court, S.D.N.Y.1908) in which the court said, p. 437,

"I think 'entry' is used in the statute in its simple and obvious meaning, viz., 'an item in an account.'"

This case involved Rev.St. Section 5209 (U.S.Comp.St.1901 p. 3497). Its language was,

"* * * who makes any false entries in any of the bank's *books* with intent to injure or defraud * * *"

(Emphasis added)

We do not think this case can be accepted as authority for cases brought under the present statute which uses the language "book, report or statement." It seems obvious that Section 1005 is intended to be broad enough to cover any document or record of the bank that would reveal pertinent information for the officers or directors of the bank.

For relevant authorities see, *United States v. Darby,* 289 U.S. 224, 53 S.Ct. 573, 77 L.Ed. 1137 (1932); *Lewis v. United States,* 22 F.2d 760 (8th Cir. 1927); *United States v. Braverman,* 522 F.2d 218, 224 (7th Cir. 1975), cert. den. 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975); *Crenshaw v. United States,* 116 F.2d 737, 739 (6th Cir. 1940).

We have not found any subsequent decisions nor have any been cited to us, requiring that the requisite "false entry" be contained in formal bank financial accounting records. The statute itself proscribes the making of any false entry "* * * in any book, report, or statement of such bank * * *." The plain language of the statute, therefore, does not appear to be concerned only with formal bank financial accounting records, as suggested by defendants.

The jury found the defendants Foster and Harmon guilty under counts twenty-six and twenty-seven and we AFFIRM.

---

**8.** See Appendix for pertinent part of statute.

The defendants were sentenced to five years imprisonment on each count, the sentences to run concurrent with each other and concurrent with sentences under other counts of the indictment.

■ Finally, the defendants claim that the trial judge erred in instructing the jury that whether loans made to Foster and Harmon were "good or bad" was immaterial to the determination of whether defendants wilfully misapplied bank assets in violation of Section 656, Title 18, U.S.C.

We find no merit to this claim.

The trial judge instructed the jury as follows:

"Members of the jury, there has been evidence introduced in this case intended to show that the loans which were made to the defendants Harmon and Foster and which were the basis of the alleged kickbacks were good loans or bad loans. The defendants Foster and Harmon, as evidence that there were good loans, introduced photographs, documents, letters and other materials regarding their business enterprises and real estate developments existing at the times referred to in the indictment. As I am sure you realize, whether a loan is a good or a bad loan is a question of degree. In any case, you may consider whether the loans were good or bad loans at the time they were made on the issue as to whether any things of value received by the defendants Barr and Murrey were given and received as kickbacks with respect to the making of loans. The question whether the loans were good or bad is not, however, determinative of the issue as to whether there were kickbacks. In summary, then, the question whether the loans were good or bad is simply evidence, together with all the other evidence, that you may consider in determining whether any things of value received by the defendants Barr and Murrey were kickbacks.

"Now, with respect to the counts of the indictment in which it is charged that there were willful misapplication of bank funds or willfully made false statements to the bank or willfully made false entries in the bank's reports, I charge you that it is immaterial whether the loan there involved was a good or bad loan and you will not consider it one way or the other for those purposes."

The defendants argue that, in order to convict under Section 656,[9] the government must show a specific intent to wilfully injure, defraud, or deceive the bank. On this issue then, they claim that they should have been permitted to show that the loans were good loans, at the time they were made, as relevant to the issue.

The authorities do not support this theory. *Galbreath v. United States,* 257 F. 648 (6th Cir. 1918); *United States v. Tokoph,* 514 F.2d 597, 604 (10th Cir. 1975); *United States v. Acree,* 466 F.2d 1114 (10th Cir. 1972), *cert. den.* 410 U.S. 913, 93 S.Ct. 962, 35 L.Ed.2d 278 (1973); *United States v. Mann,* 517 F.2d 259, 268 (5th Cir. 1975); *United States v. Fortunato,* 402 F.2d 79 (2nd Cir. 1968), *cert. den.* 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463 (1969); *Golden v. United States,* 318 F.2d 357 (1st Cir. 1963).

The defendants argue further that the government was permitted to show bank losses and that they should then have been allowed to show that the loans were good loans on the issue of intent.

The government's reply to this claim as shown in its brief at pages 45 and 46 is supported by the record,

"* * * the government objected before the trial commenced to the introduction of evidence of loss by the Bank * * * and that it was the Defendants' cross-examination of a bank witness, over the government's objection * * * that brought out the fact that the Bank was contending in a bond claim that a loss had been incurred * * *. Insofar as the five separate loans involved in the five misapplication counts are concerned, the government never offered any evidence, or so much as contended, that any of those loans resulted in any loss."

---

**9.** See Appendix for pertinent part of statute.

The judgment of the District Court is AFFIRMED in all respects.

### APPENDIX

Pertinent parts of relevant Statutes involved. All Sections quoted here are from Title 18, U.S.C.

Sec. 2 "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commissions, is punishable as a principal.

"(b) Whoever wilfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

Sec. 371 "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined * * *"

Sec. 215 "Whoever, being an officer, director, employee, agent * * * of any bank, the deposits of which are insured by the Federal Deposit Insurance Corporation * * * stipulates or receives or consents or agrees to receive any fee, commission, gift or thing of value, from any person, firm, or corporation, for procuring or endeavoring to procure for such person, firm, or corporation, from any such bank or corporation, any loan or extension or renewal of loan * * * by any such bank, or corporation, shall be fined * * *"

Sec. 656 "Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve Bank, member bank, national bank or insured bank * * * embezzles, abstracts, purloins or wilfully misapplies any of the moneys, funds or credits of such bank * * * shall be fined * * *"

Sec. 1014 "Whoever knowingly makes any false statement or report * * * for the purpose of influencing in any way the action of * * * any bank, the deposits of which are insured by the Federal Deposit Insurance Corporation * * * upon any application * * * or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined * * *"

Sec. 1005 "Whoever makes any false entry in any book, report, or statement of such bank (Federal Reserve bank, member bank, national bank or insured bank) with intent to injure or defraud such bank * * * or to deceive any officer of such bank, or the comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, or the Board of Governors of the Federal Reserve System * * * shall be fined."