UNITED STATES of America, Plaintiff,

v.

Lloyd M. EPPERSON, Defendant.

Crim. No. 82–40044.

United States District Court,
S.D. Illinois,
Benton Division.

Dec. 1, 1982.

---

Robert T. Coleman, Asst. U.S. Atty., E. St. Louis, Ill., Thor O.E. Kotlarchuck, U.S. Atty., Dept. of Justice, Washington, D.C., for plaintiff.

Elmer Jenkins, Robert W. Lewis, Benton, Ill., for defendant.

### ORDER

FOREMAN, Chief Judge:

Before the Court is defendant's Motion to Dismiss Indictment. It is submitted that the three count indictment fails to charge any criminal violation. Count I charges defendant with conspiracy to make false statements to banks (in violation of 18 U.S.C. Section 1014) and to misapply bank funds (in violation of 18 U.S.C. Section 656), all in violation of 18 U.S.C. Section 371. Counts II and III charge defendant with violating 18 U.S.C. Sections 656 and 2 by willfully misapplying money, funds and credits of the First National Bank of Woodlawn and the Peoples National Bank of McLeansboro.

The underlying scheme, as set out in the indictment, can be described as follows: In 1977, defendant was the chairman of Board of Directors of the Woodlawn Bank and a member of the Board of Directors of the McLeansboro Bank; both banks were insured by the Federal Deposit Insurance Corporation. Defendant and his co-conspirators allegedly caused loans from the banks to be made to Dr. Max Ahlers, who in turn gave the loan proceeds to DEW Mortgage Company, which in turn gave the proceeds to Southern Gardens, Inc. At all times, defendant and his co-conspirators allegedly knew that the loan proceeds would go to Southern Gardens, Inc. Defendant allegedly received 23% of the stock in Southern Gardens for arranging this financing.

Defendant argues that the indictment is insufficient as a matter of law. He makes the following points: (1) Count I fails to allege that he had knowledge of the conspiracy's illicit purpose; (2) elements of the conspiracy's objectives are not set out sufficiently; (3) Count I is barred by the statute of limitations; (4) Count I is duplicitous; and (5) Counts II and III do not allege that the nominee borrower was financially incapable of repaying the loans. The Court rejects these arguments.

First, the Court disagrees that Count I fails to allege that defendant had knowledge of the conspiracy's illicit purpose. The indictment clearly states that defendant "did willfully and knowingly combine, conspire, confederate and agree together with Dale E. Witsman, Sr., James A. Nigg, Donald R. Parrish ..." to make false state-

ments, to misapply funds, and to defraud the United States.

 Defendant's second point is similarly meritless. Specifically, he argues that the elements of the substantive crimes constituting the objects of the conspiracy are not enumerated in Count I. If such a strict pleading standard was required, defendant's argument would have merit. Rather, the Seventh Circuit has recognized that the substantive criminal objectives of a conspiracy need not be alleged as if charging the substantive offense itself:

Wilful misapplication was charged as one of several illegal objects of the conspiracy. As part of the conspiracy charge, it need not be alleged as precisely as would be necessary in a substantive count.

*United States v. Grizaffi,* 471 F.2d 69, 73 (7th Cir.1972). Clearly, alleging all the elements is not necessary:

It is not necessary in a conspiracy indictment to allege with precision all the elements essential to the offense which is the object of a conspiracy; allegations clearly identifying the offense defendants conspired to commit are sufficient.

*United States v. Kahn,* 381 F.2d 824, 829 (7th Cir.1967). It cannot be argued seriously that Count I fails to identify clearly that defendant conspired to violate 18 U.S.C. Sections 1014 and 656.

 Count I is not barred by the statute of limitations. Defendant argues that Count I fails to show any agreement or act which occurred within five years of the filing of the indictment, and that 18 U.S.C. Section 3282 bars the charge of conspiracy. This assertion is simply untrue. As the Government indicates, nine of the fourteen overt acts alleged were committed within five years of the filing of the indictment. The statute of limitations starts to run on the date of the last overt act alleged. *United States v. Walker,* 653 F.2d 1343 (9th Cir.1981); *United States v. Charnay,* 537 F.2d 341, 354 (9th Cir.), *cert. denied,* 429 U.S. 1000, 97 S.Ct. 527, 50 L.Ed.2d 610 (1976). In *Grunewald v. United States,* 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), the Supreme Court focused on the character

of alleged overt acts to determine whether they can be part of the conspiracy for purposes of the statute of limitations:

[T]he crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy.

*Id.* at 397, 77 S.Ct. at 970. Nowhere in his motion does defendant argue that the overt acts allegedly committed within five years of the filing of the indictment do not constitute acts "in furtherance of the conspiracy." Any such argument would be fruitless. Many of those alleged acts involve the actual money transactions underlying the alleged scheme.

 Defendant's fourth point is that the phrase "money, funds, and credits," renders the indictment impermissibly duplicitous. Defendant relies on *United States v. Smith,* 152 F. 542 (D.Ky.1907) which held that a charge of misapplying "funds and credits" was fatally duplicitous. The Court declines to dismiss the indictment on this ground. First, *Smith* is distinguishable. That Court emphasized that the indictment failed to set forth any description of either "funds or credits." The same could not be said about the indictment in this case. That which was allegedly misapplied is set forth in detail. Second, it has been held more recently that the phrase "money, funds, and credits" does not render an indictment duplicitous. *United States v. Cooper,* 464 F.2d 648 (10th Cir.1972), *cert. denied,* 409 U.S. 1107, 93 S.Ct. 901, 34 L.Ed.2d 688, *rehearing denied,* 410 U.S. 959, 93 S.Ct. 1416, 35 L.Ed.2d 695 (1973); *Mulloney v. United States,* 79 F.2d 566 (1st Cir.), *cert. denied,* 296 U.S. 658, 56 S.Ct. 383, 80 L.Ed. 468 (1935).

 Defendant's final point challenges the sufficiency of Counts II and III, which charge violations of 18 U.S.C. Sections 656 and 2. Section 656 provides in part:

Whoever, being an officer, director, agent or employee of, or connected in any ca-

pacity with any Federal Reserve bank, member bank, national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

Relying primarily on *United States v. Gens,* 493 F.2d 216 (1st Cir.1974), defendant argues that before he can be found liable, under Section 656, the government must prove that one of three possible situations occurred: (1) the named borrower is fictitious or unaware that his name is being used in connection with the loan application; (2) the bank officials knew at the time of making the loan that the named borrower was financially incapable of repaying the loan; or (3) the named borrower knew at the time of making the application that the bank would not look at him for repayment of the loan. *Id.* at 221–22. Defendant submits that the indictment fails to allege any of these situations and that it should be dismissed. Further, it is argued that no reported decision defines the facts of this case as misapplication; if this Court holds as a matter of law that Counts II and III sufficiently charge misapplication, then Section 656 is unconstitutionally vague. The Court disagrees with all these points.

Some support can be marshalled in favor of defendant's position. In *Gens,* bank officials authorized loans to named debtors who turned over the proceeds to Gens for use in his nursing home business. It was clear from the evidence that the named borrowers considered themselves liable on the loans and were financially responsible for repayment. The *Gens* Court found that a

bank official could not be found guilty of misapplication for merely granting a loan to financially responsible nominee borrowers while knowing that the proceeds would be turned over to a third party. The Court stated:

> [W]here the named debtor is both financially capable and fully understands that it is his responsibility to repay, a loan to him cannot—absent other circumstances—properly be characterized as sham or dummy, even if bank officials know he will turn over the proceeds to a third party. Instead, what we really have in such a situation are two loans: one from the bank to the named debtor, the other from the named debtor to the third party. The bank looks to the named debtor to the third party for repayment of his loan. If for some reason the third party fails to make the repayment to the named debtor, the latter nonetheless recognizes that this failure does not end his own obligations to repay the bank. In this situation, the bank official has simply granted a loan to a financially capable party, which is precisely what a bank official should do. There is no natural tendency to injure or defraud the bank, and the official cannot be said to have willfully misapplied funds in violation of Section 656.

*Id.* at 222. This reasoning was relied upon in *United States v. Gallagher,* 576 F.2d 1028 (3rd Cir.1978). The underlying rationale of the *Gens* result is that the bank involved cannot be injured or defrauded if the loan is made to a financially responsible nominee borrower. This Court and several others disagree with this perceived purpose of Section 656.

Clearly, Section 656 was enacted to protect banks insured by F.D.I.C. The type of injury contemplated occurs when funds are distributed under a record which misrepresents the true state of the record with the intent that bank officials, bank examiners, and F.D.I.C. will be deceived. *United States v. Dreitzler,* 577 F.2d 539, 546 (9th Cir.1978); *United States v. Kennedy,* 564 F.2d 1329, 1339 (9th Cir.1977); *Hargreaves v. United States,* 75 F.2d 68, 72 (9th Cir.),

*cert. denied,* 295 U.S. 759, 55 S.Ct. 920, 79 L.Ed. 1701 (1935) (interpreting Section 592, the predecessor of Section 656). The *Dreitzler* Court succinctly stated that Section 656 protects a bank's right to know where its money, funds, and credits are disbursed:

> The cases are clear that misapplication may be found where it is shown that a bank is deprived of its right to have custody of its funds, that is, its right to make its own decision as to how the funds are used. *Golden v. United States,* 318 F.2d 357, 360–361 (1st Cir.1963); *See also United States v. Kennedy,* 564 F.2d 1329, 1339 (9th Cir.1977). The government need not prove that the bank suffered any immediate loss, *See Golden, supra* at 360, but only that the bank's funds were disbursed under a false record. *Kennedy, supra* at 1339; *United States v. Fortunato,* 402 F.2d 79, 81 (2d Cir.1968), *cert. denied,* 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463 (1969).

*Dreitzler, supra* at 546. Given this purpose, the financial capability of the nominee borrower becomes irrelevant. Defendant would have this Court hold categorically that if a bank official has no personal stake in making the loan, any loan made to a financially responsible nominee borrower could never be misapplication, regardless of whether the officer knew the ultimate beneficiary was a third-party. Such a holding, however, would ignore the right of a bank to be party to a decision affecting its funds.

Defendant's argument that no reported decision defines his conduct as misapplication is wrong. The Court in *Kennedy,* recognizing the purpose behind Section 656, defined as misapplication a situation similar to those charged in Counts II and III:

> The evidence supports a finding that Kramer delivered $15,000 of the bank's funds to appellant well knowing that the money was actually to be channeled to Adair. Kramer was able to so misapply the funds through the fiction of appellant's false statement of purpose.... [Such] a sham arrangement violates 18 U.S.C. Section 656, as interpreted under *Hargreaves v. United States, supra.*

*Kennedy, supra,* 564 F.2d at 1341. Although that Court was considering the appeal of the nominee borrower, its reasoning undeniably implies that a bank official violates Section 656 by making a loan, fully aware that the proceeds would be funneled to a third party. In such a case, the bank, through deception, is deprived of its right to its funds. *See Dreitzler, supra; Hargreaves, supra.*

The Court in *United States v. Krepps,* 605 F.2d 101 (3rd Cir.1979) considered a situation where the bank official made a loan to himself through a nominee borrower. The Court defined such conduct as misapplication. The Court attempted to harmonize its result with those of *Gens* and *Gallagher* by distinguishing between two factual situations: (1) a bank officer misapplying funds for his own use; and (2) a bank officer making a loan to a nominee borrower, knowing the proceeds would go to another. In the latter situation, the *Krepps* Court opined that the bank is not injured. *Gallagher, supra; Gens, supra.* However, in the former situation, the bank officer is guilty of misapplication, regardless of the financial capability of the nominee borrower. The sole basis for this apparent distinction is that the official misapplying funds for his own use is not doing "precisely what a bank official should do." *Krepps, supra,* 605 F.2d at 106, *quoting, Gens, supra,* 493 F.2d at 222. In support of this apparent distinction, the *Krepps* Court opined that misapplying funds for one's own use somehow involves more deceit and fraud, especially in light of civil limitations on loans to bank officials. *Krepps,* 605 F.2d at 106–08. *See also United States v. Steffen,* 641 F.2d 591, 597 (8th Cir.1981).

This Court views as irreconcilable the result in *Krepps* and the results in *Gens* and *Gallagher.* First, when a nominee borrower is financially responsible, under the analysis of *Gens* and *Gallagher,* the bank cannot be injured. This reasoning strongly implies that one who uses a financially responsible nominee borrower to misapply funds for his own use is not guilty of misapplication. In both situations, the bank, the beneficiary of Section 656, stands in the same posture—it

is looking to a financially responsible party for repayment. Second, the alleged distinction recognized in *Krepps* elevates the circumvention of civil limitations on insider loans to the stature of a federal felony. As noted, *Krepps* reasoned that one who misapplies for his own use is more deceitful because such conduct violates civil limitations of insider loans. If this truly distinguishes the *Krepps* facts from those in *Gens,* then Section 656 violations would become tantamount to violations of the civil limitations. The Court in *United States v. Christo,* 614 F.2d 486 (5th Cir.1980) condemned such a result. That Court specifically found as error the district court's instruction that arguable violations of a civil restriction could serve as a factual basis for a criminal misapplication conviction. *Id.* at 490–492. The alleged distinction between *Krepps* and *Gens* does not withstand analysis. Finally, the alleged distinction between *Krepps* and *Gens* ignores the purpose behind Section 656. As noted, Section 656 protects a banker's right to know where its funds are disbursed. Given this purpose, the financial capability of the nominee borrower as well as the ultimate beneficiary of the loan became irrelevant.

Even if this Court's perception of the purpose behind Section 656 is erroneous, the indictment still states violations. As noted, defendant allegedly received 23% of Southern Gardens, Inc.'s stock as consideration for arranging the sham loan. The Court views this alleged arrangement as substantially the same as that in *United States v. Foster,* 566 F.2d 1045 (6th Cir.1977). In *Foster,* the defendants approved loans destined to certain business parties. The defendants then received kickbacks out of the loan proceeds. The *Foster* Court described the situation as follows:

> Unlike Barr and Murrey in this case, the defendants in *Gens* were not recipients of kickbacks from loans which they had approved in accordance with a previous arrangement. What Barr and Murrey did was to approve loans which they knew they would receive a portion in return. It was necessary therefore that the loans be made for a greater amount than was required for the purpose of the loan.

This we consider as evidence of misapplication of bank funds.

566 F.2d at 1050. This Court sees little difference between receiving a cash kickback or a stock kickback. Either would operate as an inducement to arrange financing, thus constituting the loan officer's personal stake in the loan, and would affect the amount actually loaned. Employing the reasoning of *Foster,* the Court finds that when a bank officer who approves a loan knowing that the proceeds will be transferred to a third party, and that third party gives the bank officer stock in consideration for the arrangement, Section 656 is violated.

Accordingly, defendant's Motion to Dismiss Indictment is hereby DENIED.

IT IS SO ORDERED.