**UNITED STATES of America, Appellee,**

v.

**Mohammed Ibrahim KANDIEL, a/k/a Jeff Howard, Appellant.**

No. 87–5385.

United States Court of Appeals,
Eighth Circuit.

Submitted May 12, 1988.

Decided Jan. 23, 1989.

John W. Lundquist, Minneapolis, Minn., for appellant.

Jerome G. Arnold, Atty. Gen., Minneapolis, Minn., for appellee.

Before HEANEY,* Circuit Judge, ROSS, Senior Circuit Judge, and HILL,** Senior District Judge.

ROSS, Senior Circuit Judge.

Mohammed Ibrahim Kandiel, a/k/a Jeff S. Howard (appellant), was convicted by a jury on thirteen counts of various firearms violations, 18 U.S.C. § 922(g)(5), 26 U.S.C. § 5861, 18 U.S.C. App. § 1202(a)(5), making false statements in applications for passports, 18 U.S.C. § 1542, making false representation of citizenship in enlisting in the United States Army, 18 U.S.C. § 911, and making false statements in applications for federal firearms dealer and import licenses, 18 U.S.C. § 924(a). Appellant was sentenced to a prison term of 42 months concurrent on all counts.

The issue of appellant's true identity was critical at trial and remains so on appeal. Appellant asserts that he is not Mohammed Ibrahim Kandiel, an Egyptian national, as the government contends. Instead, he claims he is American born, Jeff S. Howard. For reversal appellant argues that the district court improperly allowed expert testimony on the statistical probabilities of a familial relationship between appellant and Egyptian national Ahmed Kandiel, based on blood sample comparisons of the two men. Appellant also argues that he was prejudiced by the admission of other crimes evidence, that the trial court lacked impartiality which violated his right to a fair trial, and that tape recordings purportedly between the appellant and his Egyptian family were admitted without founda-

tion. For the reasons discussed below, we affirm the conviction.

## I.

Appellant claims that he is a life-long resident of the United States, having been born in Charleston, West Virginia on December 21, 1952. He has been a Minnesota resident for many years, has operated two game farms and has held several firearms licenses issued by the Bureau of Alcohol, Tobacco and Firearms.

In contrast, the government's evidence indicated that appellant is Mohammed Ibrahim Kandiel, born in Shorba, Egypt on March 20, 1948; that he has two sisters, Nagwa and Shadia, and a brother, Ahmed; that he left home at the age of 16 and in early 1968 was captured in the Israeli–PLO conflict.

The government's evidence showed that in April 1972, the appellant was traveling in Paris, France where he met five American women from Madison, Wisconsin. At that time appellant was calling himself "Jack." He spoke poor English and had a foreign accent. In January 1973, appellant was fingerprinted by the Brunswick, Georgia police under the name Geoffrey Scott Howard, born September 13, 1949 in Charleston, West Virginia. Another Geoffrey Scott Howard, also born in Charleston, West Virginia, had also traveled extensively through Europe, including Paris, France in October and November 1972.

In the summer of 1973, appellant went to Madison, Wisconsin where he contacted two of the American women he had met earlier in Paris. He later became romantically involved with one of the women, who then gave birth to his child. The child was named Shadia, which is also the name of Mohammed Kandiel's sister.

In August 1973, appellant was fingerprinted by the Minneapolis police using the name Jeff Soun Howard, born December 21, 1953, a name and birthdate different

* The HONORABLE GERALD W. HEANEY assumed senior status on January 1, 1989.

** The HONORABLE IRVING HILL, Senior United States District Judge for the Central District of California, sitting by designation.

from that which he had used eight months earlier in Brunswick, Georgia.

In February 1977, appellant's purported brother, Ahmed Kandiel, arrived in the United States and resided with appellant. In the summer of 1980, appellant's parents arrived from Egypt and stayed with him for four months.

In April 1981, the United States Immigration and Naturalization Service began its investigation of appellant. Shortly thereafter, appellant made application for a delayed birth certificate from West Virginia, submitting with the application a false affidavit of identity. Upon the issuance of the birth certificate, appellant made application for a United States passport using the newly acquired birth certificate as evidence of citizenship. The record discloses that in establishing his identity for his passport applications, appellant obtained the signatures of several individuals on false affidavits. The charges against appellant for making false statements stemmed from these applications.

Furthermore, the government's evidence showed that in March 1984, using his false identity, appellant made application for a federal firearms dealer license. In August 1985, appellant made application for a federal firearms importer license, again using his false identity. Also in August 1985, appellant traveled to the Middle East countries of Syria, Jordan and Egypt. While in Egypt he visited his parents and his brother.

In March 1987, search warrants were executed and appellant was taken into custody. Items seized from his home included old photographs of appellant and his family in Egypt, tape recordings of conversations in Arabic between appellant and his family, as well as various firearms.

In June 1987 trial commenced. During trial, the judge ordered appellant to submit a blood sample for genetic marker testing. This sample was then compared with a sample obtained from Ahmed Kandiel, the man who claims he is appellant's brother. Evidence of the blood tests, which showed that appellant was seventeen to one times more likely to be the brother of Ahmed Kandiel than if picked at random, were admitted over appellant's objections.

The jury subsequently returned a verdict finding appellant guilty as charged. This appeal followed.

## II.

Appellant's first point urged for reversal is that expert testimony concerning the genetic marker testing of appellant and Ahmed Kandiel was improperly admitted because of its untimeliness and its speculative and conjectural nature.

On the day before trial the government learned that in 1981 a sample of appellant's blood had been tested by Dr. Herbert Polesky for genetic tracings in a contested paternity action. On the first day of trial, the government placed Dr. Polesky on the witness list and appellant's purported brother, Ahmed Kandiel, submitted a sample of his blood for genetic testing and comparison with appellant's 1981 sample. On the second day of trial the government moved the court to compel appellant to submit a sample of his blood to determine the presence of the HLA genetic marker, a relatively precise genetic marker not obtained from the 1981 blood test. The court eventually granted the motion and ordered the blood sample to be drawn, and further ordered the government to provide the defense with results so that it could prepare its cross examination.

The defense, however, did not receive Dr. Polesky's report until the day he testified. The appellant now argues that he was deprived of his right to a fair trial because his attorney did not have time to adequately prepare his cross examination. To this the government counters that the result of the second blood test was made available to the defense within fifteen minutes of its receipt by the government. Despite the trial court's extension to the defense counsel of the opportunity to move for a continuance, no request for additional time nor any motion for a continuance was made. Because the defense counsel had been on notice for several days that the blood test was to be made, the trial court ruled that the defense

had ample opportunity to research the issue or perform its own test for the purpose of preparing an adequate cross examination. Moreover, appellant had available to him the results of the 1981 genetic testing which included all tested genetic markers except the HLA marker.

▇▇ Appellant's claim was readily curable by a motion for continuance. Defense counsel chose not to avail himself of this opportunity and therefore the claim of untimeliness was not properly preserved for appeal. Nor has appellant alleged any facts which would constitute plain error or abuse of discretion in absence of a *sua sponte* continuance order by the court. *See United States v. Steffen*, 641 F.2d 591, 595 (8th Cir.), *cert. denied*, 452 U.S. 943, 101 S.Ct. 3091, 69 L.Ed.2d 959 (1981).

Appellant also argues that the trial court erred in allowing expert testimony on the statistical probabilities of a familial relationship between appellant and Ahmed Kandiel. Dr. Polesky testified that, based on a comparison of the HLA genetic markers when applied to population frequencies of blood group typings, appellant was seventeen times more likely than someone from a random population to be the brother of Ahmed Kandiel. Furthermore, Dr. Polesky testified as to the presence of the negative Duffy factor in the blood of both appellant and Ahmed, as well as to the frequencies of the Duffy genetic marker in various populations. Dr. Polesky opined that the probability of a negative Duffy factor being present in the child of a Native American, as appellant claimed his mother was, would be approximately one in 1,000. Appellant argues that such testimony impermissibly established by mathematical certainty that appellant was Egyptian-born Mohammed Kandiel.

Dr. Polesky's testimony was admitted by the trial court against a general objection by defense counsel that such testimony would be speculative and conjectural. Although the trial court instructed defense counsel to make specific objections during Dr. Polesky's testimony, defense counsel refrained from doing so.

Appellant's argument rests primarily on our holding in *United States v. Massey*, 594 F.2d 676, 681 (8th Cir.1979), where we held that expert testimony on microscopic hair comparison analysis and statistical probabilities of suspect identification had been improperly admitted. *Massey*, however, must be limited to its facts. The expert witness in *Massey* testified that out of the 2,000 comparisons which he had conducted, he had been unable to distinguish the hairs of two individuals on only a couple of occasions. From this the prosecutor argued that there was better than a 99.44% accuracy rate in the comparison study. *Id.* at 680. We reversed the trial court's decision to admit such testimony based on our determination that statistical probabilities could not be drawn from the expert's own experience. We concluded that testimony which expressed a mere opinion or conclusion in terms of statistical probabilities lacked sufficient foundational support and prejudicially suggested mathematical certainty in the identification of the defendant as the perpetrator of the crime. *Id.* at 680–81.

▇▇ A vastly different situation is presented to us here. In the instant case, Dr. Polesky's testimony on statistical probabilities was based on frequency tables which had been derived from scientifically controlled random population studies. It is the expert's reliance on the frequency tables and scientific studies which provided the foundation for Dr. Polesky's testimony on statistical probabilities which was lacking in *Massey*. Statistical evidence is not inadmissible per se. *United States v. Gwaltney*, 790 F.2d 1378, 1382 (9th Cir. 1986), *cert. denied*, 479 U.S. 1104, 107 S.Ct. 1337, 94 L.Ed.2d 187 (1987). The trial judge is given broad discretion in his decision to admit or exclude expert testimony, and his action must be sustained unless found to be manifestly erroneous. *United States v. Tovar*, 687 F.2d 1210, 1215 (8th Cir.1982). Because Dr. Polesky's testimony was neither misleading nor confusing, nor did it serve to reduce the ultimate question of guilt or innocence to one of mathematical probabilities we find that the

district court did not err in admitting such testimony.

## III.

■■■■ Appellant next claims error in the trial court's improper admission of "other crimes" evidence. The government introduced three fingerprint cards for the purpose of proving appellant's identity as an alien. The first placed appellant in Georgia in January 1973, using the name Geoffrey Scott Howard, born September 13, 1949. The second card placed appellant in Minneapolis in August 1973, using the name of Jeff Soun Howard and a different date of birth, December 21, 1952. The first two fingerprint cards related to appellant's previous arrests. The third fingerprint card was taken in March 1987, shortly after appellant's arrest on the charges involved in the instant case. Each of the fingerprint cards was admitted into evidence without objection. The defense's only attempt to exclude the fingerprint cards was through a motion in limine. Without an objection to the evidence at trial, however, the motion in limine to exclude the evidence was not sufficient to preserve the claim on appeal. *United States v. Robertson,* 706 F.2d 253, 255 n. 2 (8th Cir.1983). We conclude that the introduction of this evidence was not impermissible under the plain error doctrine.

Appellant also argues that the prosecutor improperly made reference to appellant's 1984 state court prosecution for illegally possessing a machine gun, for which appellant was subsequently found to be not guilty. The firearm which he was charged with having possessed in the state court case is the same firearm charged under Count V, unlawful possession of a firearm by an alien, Count VI, manufacture of a machine gun, and Count VII, possession of an unregistered machine gun.[1]

During the lengthy investigation of his activities, appellant revealed to an undercover officer on tape that he had prepared a false receipt to establish that the rifle, which had been converted to a fully automatic weapon, was not his but had been sold to a third party. During trial on the charges herein the government stated that it intended to offer testimony that the appellant admitted on tape to an undercover agent that he falsified a receipt to beat the 1984 prosecution. Appellant objected to admission of or reference to the receipt and the court ultimately ruled that the evidence would not be admitted in order to avoid any potential prejudice, and accordingly ordered the prosecution to edit the tape to avoid reference to the receipt.

■■■ The tape was played the following day of trial and a transcript of the tape was given to the jury. The government, however, failed to fully edit out references to the receipt and the tape was stopped at the request of defense counsel. Appellant argues error in admission of the portion of the tape played at trial, as well as other references to the falsified receipt in the transcript given to the jury. He argues that evidence of the receipt was irrelevant, highly prejudicial and inadmissible under Fed.R.Evid. 404(b). While we will not condone the government's negligence in failing to properly edit the tape as ordered by the district court, we do not find that such failure constitutes reversible error.

■■■■ Rule 404(b) is a rule of inclusion permitting admission of "other crimes" evidence unless it tends to prove only the defendant's criminal disposition. *United States v. Mothershed,* 859 F.2d 585, 589 (8th Cir.1988). "Reversal is only commanded when 'it is clear that the questioned evidence has no bearing upon any of the issues included.'" *United States v. Marshall,* 683 F.2d 1212, 1215 (8th Cir.1982) (quoting *United States v. Conley,* 523 F.2d 650, 654 (8th Cir.1975), *cert. denied,* 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 327 (1976)). It remains true, however, that the admission of prior bad acts evidence under Rule 404(b) requires that the evidence be

---

1. Appellant moved to dismiss these counts on the grounds of double jeopardy and collateral estoppel. This motion was denied on the basis of the dual sovereignty doctrine. *See Pope v.* *Thone,* 671 F.2d 298, 300 (8th Cir.), *cert. denied,* 457 U.S. 1140, 102 S.Ct. 2974, 73 L.Ed.2d 1360 (1982). This issue has not been appealed.

relevant to a material issue other than character, subject to proof by a preponderance of the evidence, more probative than prejudicial, and similar in kind and close in time to the crime charged. *United States v. Mothershed, supra,* 859 F.2d at 588; *Huddleston v. United States,* — U.S. ——, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988).

■ Based on our review of the record we conclude that appellant's recorded statement to the undercover officer that he falsified a receipt in order to conceal his ownership and possession of a converted fully automatic machine gun is probative of the issue of possession of the firearm by the appellant and was therefore admissible under Rule 404(b). Furthermore, we find that the probative value of the evidence was not outweighed by its prejudicial effect given its truncated admission. Even if we were to find that admission of the evidence was prohibited by Rule 404(b), we hold that in light of the other substantial evidence of appellant's guilt, any error in the admission of the falsified receipt evidence was harmless. *See United States v. Mays,* 822 F.2d 793, 798 (8th Cir.1987).

### IV.

■ Appellant also contends that the trial court improperly aided the government in its examination of various witnesses to the extent that an impression was created that the court favored the prosecution, resulting in the deprivation of appellant's right to a fair trial. Since defense counsel did not object to the court's interjections at trial, this court must review the alleged error under the plain error doctrine and in terms of whether such participation by the trial court affected substantial rights of the appellant. *See* Fed.R.Crim.P. 52(b).

As this court has stated,

A trial judge is more than a "mere moderator" of a trial * * *. [The trial judge] has the prerogative, and at times the duty, of eliciting facts he deems necessary to the clear presentation of the issues. To this end he may examine witnesses who testify, so long as he pre-

serves an attitude of impartiality and guards against giving the jury an impression that the court believes the defendant is guilty.

*United States v. Gleason,* 766 F.2d 1239, 1243 (8th Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986), (quoting *Llach v. United States,* 739 F.2d 1322, 1329–30 (8th Cir.1984)).

■ After a thorough examination of the record we conclude that the trial judge's questioning neither lacked the color of neutrality nor improperly emphasized the prosecution's case. *See United States v. Bland,* 697 F.2d 262, 265–66 (8th Cir. 1983). The record reflects that the trial judge's questions were made for the purpose of clarifying ambiguous testimony and that no prejudice resulted.

■ We also find that the trial court's comment after the verdict regarding the final witness' "flagrant perjury" does not warrant reversal. Because the remark was made after the verdict, it cannot be deemed prejudicial. While such comments could indirectly reveal the judge's feelings throughout the trial, *see United States v. Bland, supra,* 697 F.2d at 266, such is not the case here where the judge's comments went to the last witness presented. Any attitude which the judge adopted at this point in the case is not properly attributed to questions he raised earlier in the trial.

### V.

We also reject appellant's argument that the district court improperly admitted into evidence two audio cassette tapes which had been seized from appellant's residence following his arrest. Appellant claims that the government failed to establish adequate foundation for admission of the tapes as required by Fed.R.Evid. 901(a).

■ The tapes sought to be admitted contained conversations between appellant and his alleged brother, sister, mother and father, all speaking Arabic. Relying on *United States v. McMillan,* 508 F.2d 101 (8th Cir.1974), *cert. denied,* 421 U.S. 916,

95 S.Ct. 1577, 43 L.Ed.2d 782 (1975),[2] appellant argues that the government failed to show what the origin of the tape was; how the voices were recorded, by whom, when; that the recording is authentic and had not been altered, and a proper identification of the speakers. Appellant's insistence on strict conformity with the *McMillan* requirements is unfounded in the instant case where the tapes sought to be admitted were found in the appellant's possession.

In *United States v. O'Connell*, 841 F.2d 1408, 1420 (8th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988), this court stated that the *McMillan* criteria have "particular application to government usage of recording equipment, where special concerns may arise regarding the competence and reliability of inculpatory evidence." In contrast, when the facts demonstrate that the recording was found in a defendant's possession, it should not be "subject to the same [authentication] requirements we apply when a government agent or informant initiates a conversation knowing that it is to be recorded. * * * We do not believe * * * that under such circumstances mechanical or wooden application of the *McMillan* requirements is necessary." *Id.*

■ Applying these principles, we conclude that the government laid a proper foundation for introduction of the two cassette tapes into evidence. The tapes were found at appellant's home. Ahmed Kandiel testified that the tapes were made in Egypt and sent to appellant by their mother and father while Ahmed was living with appellant. The contents of the tape recordings have numerous references to people, places and activities that were corroborative of other testimony in the record. We believe the government has offered sufficient circumstantial evidence to establish the prima facie authenticity and correctness of the tapes.

■ Furthermore we find that the government sufficiently established the identity of the speakers through the testimony of Ahmed Kandiel. Appellant's argument that Ahmed's credibility was suspect, and that therefore his testimony was insufficient to establish foundation for the admission of the tapes is without merit. Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, may be made "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Fed. R.Evid. 901(b)(5). Any question concerning the credibility of the identifying witness simply goes to the weight the jury accords this evidence, not to its admissibility. *United States v. Kirk*, 534 F.2d 1262, 1277 (8th Cir.1976), *cert. denied*, 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091 (1977). Our review of the record convinces us that the district court did not abuse its discretion in finding that proper foundation was laid for admitting the tapes. *See United States v. Johnson*, 767 F.2d 1259, 1271 (8th Cir. 1985).

## VI.

Because we find appellant's allegations of error to be without merit, the judgment of conviction is affirmed.

2. *McMillan* sets forth seven foundational requirements for admitting tape recordings into evidence: 1) the recording device was capable of taping the conversation; 2) the operator was competent to operate the device; 3) the recording is authentic and correct; 4) no changes, additions or deletions have been made in the recording; 5) the recording is shown to have been preserved; 6) the speakers are identified; and 7) the elicited conversation was made without inducement. *United States v. McMillan*, 508 F.2d 101, 104 (8th Cir.1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975).