**UNITED STATES of America, Appellee,**

v.

**Ananias TAYLOR, Jr., a/k/a J.T., Appellant.**

**No. 89–5374.**

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1990.

Decided June 12, 1990.

Deborah Ellis, St. Paul, Minn., for appellant.

Douglas R. Peterson, Minneapolis, Minn., for appellee.

Before McMILLIAN and BEAM, Circuit Judges, and HEANEY, Senior Circuit Judge.

BEAM, Circuit Judge.

Ananias Taylor appeals from his conviction of four counts of bank robbery in violation of 18 U.S.C. § 2113(a), (d) (1988). On appeal, Taylor argues, in part, that the district court improperly admitted testimony that was unfairly prejudicial. We affirm.

## I. BACKGROUND

Taylor was indicted on March 22, 1989, on four counts of bank robbery. Each count alleged a single robbery, but all of the robberies were of Minneapolis banks. The first occurred on February 7, 1989, at the City County Federal Credit Union. As with the other robberies, that at the credit union took place in the afternoon, and began when the robber approached a teller, Nancy Cunningham, and asked for change. Cunningham testified that as she was getting change, the robber pointed a gun at her, which he shook now and then when he

spoke, handed her a paper sack, and demanded that she fill it with money. Cunningham testified that she got a good look at the robber, who wore a ski cap but no covering on his face. Cunningham was able to give a description of the robber, and later picked Taylor out of a lineup. She identified him at trial as the robber, and was certain that he was the man depicted in three photographs which were introduced as evidence, taken by the credit union's security camera.

Kathy Seaton, a teller at the branch of Twin City Federal that was robbed on February 21, 1989, testified that the robber, after requesting change, pushed a paper sack at her and demanded that she fill it with money. The robber, unmasked, held a gun within two feet of her as she complied. Seaton identified Taylor at trial as the robber.

Under similar circumstances, the Camden Branch of Norwest Bank was robbed on February 27, 1989. Dara Swendson, a teller, identified Taylor, who verbally threatened to shoot her with a gun, as the robber. She said that she got a good look at the robber as he left the bank, and that, from his eyes, skin tone and walk, she was certain that the robber was Taylor. Jerri Korfiatis, another bank employee, also saw the robber and identified him at trial as Taylor.

Finally, Candi Schultz, who works as a teller at the First National Bank of the Lakes, testified about the March 2, 1989, robbery of that bank. The robbery was similar to the other three, except that the robber attracted the attention of the teller next to Schultz, James Ripple, at whom the robber also pointed his gun. Both Schultz and Ripple identified Taylor as the robber.

Thus, the government's case consisted of the eyewitness identification of Taylor by six bank employees as well as testimony concerning the circumstances surrounding his arrest, his purchase of a car, and his financial condition. Taylor was arrested on March 3, 1989, the day after the last robbery, and was tried on May 17, 1989. He was convicted of all four counts, and sentenced to 276 months imprisonment. On appeal, he argues primarily that the testimony of Stephen Aguilar was so prejudicial that it denied him a fair trial.

## II. DISCUSSION

Toward the end of its case-in-chief, the government called Stephen Aguilar, who, at the time of trial, was an inmate at the St. Cloud State Prison. Before that, Aguilar was incarcerated at the Stillwater State Prison at the same time Taylor was held there pending trial. Aguilar testified about a conversation he heard at the Stillwater prison between Taylor and another inmate. The discussion occurred around 3:00 a.m., and was carried on between the first and fourth tiers of the prison. Taylor was on the fourth tier, the other conversant was on the first. Aguilar was between them on the third level. While Aguilar could not see Taylor at the time, he identified him by his voice. Aguilar testified that Taylor admitted that he committed the last robbery, that he had known federal agents were looking for him shortly before his arrest, and that he hid the gun and the money. Aguilar took a personal interest in the conversation because his girlfriend was a teller at the bank that had been robbed. He took notes of the conversation and later reported it to federal agents.

Prior to Aguilar's testimony, Taylor's counsel asked that it be excluded. The ensuing discussion between court and counsel took place immediately before Aguilar testified, out of the presence of the jury. Taylor made two objections, the first being that the evidence was more prejudicial than probative because it would disclose to the jury that Taylor was detained prior to trial. Trial Transcript vol. 3, at 255. Taylor also objected that the testimony lacked proper foundation and was inherently unreliable because of its setting. *Id.* at 256.

The prosecutor related to the court the information Aguilar had given her about the conversation including the fact that Aguilar could clearly hear the discussion and had made notes of it because of his personal connection. *Id.* at 257. The district court, relying on these representations, overruled Taylor's motion to exclude and indicated that the testimony would be

received. *Id.* at 258. At oral argument, Taylor asserted that because Aguilar, at the time he heard the conversation, could not establish that he knew the speaker was Taylor, the testimony lacked foundation.

We think that the district court properly admitted the testimony over the foundation objection. While the district court could have allowed Taylor to inquire into foundation out of the presence of the jury, we are satisfied from a review of the record that sufficient foundation existed. Thus, the district court did not abuse its discretion in overruling the motion to exclude the evidence for lack of foundation. *See United States v. Kandiel,* 865 F.2d 967, 974 (8th Cir.1989).

 Taylor also argues that Aguilar's testimony was unfairly prejudicial because it revealed to the jury that Taylor had been detained prior to trial. We note, however, that this fact did not come out on direct examination. The direct examination, which occupies less than two pages of the trial transcript, revealed only Aguilar's knowledge of Taylor, and the substance of the conversation Aguilar overheard. Aguilar was simply asked: "Was there ever a time when you overheard a conversation between Mr. [Taylor] and someone else?" Trial Transcript vol. 3, at 260. The setting or circumstances of the conversation were not disclosed. Those facts were revealed only on cross-examination. Indeed, Taylor's counsel inquired in her first two questions on cross-examination whether Aguilar was currently incarcerated, and whether he had been when he heard the conversation to which he testified. *Id.* at 261. Any prejudice which resulted because the jury became aware of Taylor's pretrial detention was caused by Taylor.

Implicit in Taylor's argument is the contention that Aguilar's testimony forced Taylor to reveal his pretrial detention in order to effectively cross-examine Aguilar. We disagree that Taylor could not have questioned the reliability of Aguilar's testimony without revealing the prison setting. Indeed, part of Taylor's cross-examination strategy appears to have been to discredit Aguilar because of his prior felony convictions. *See id.* at 262. Since any prejudice which resulted from Aguilar's testimony was not developed through direct questioning by the government, we find no error in admitting that testimony. *See United States v. Skinner,* 667 F.2d 1306, 1310 (9th Cir.1982), *cert. denied,* 463 U.S. 1229, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983).

We note that Aguilar's testimony was brief and added little to the government's case. The evidence against Taylor was, by comparison, overwhelming. The four bank tellers who faced Taylor at gunpoint all testified that they were certain of their identification. All four picked Taylor out of a lineup. Taylor, without any facial covering, was captured on videotape at some of the banks, and the tapes were played to the jury. Given this and other evidence, any error in admitting Aguilar's testimony was harmless. *See United States v. Dawn,* 897 F.2d 1444, 1450 (8th Cir.1990).

## III. CONCLUSION

We have considered Taylor's other arguments on appeal, and find them to be without merit. For the reasons stated, we affirm the judgment of the district court.