# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 38888**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Collin M. LEE**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 14 March 2017

————————————

*Military Judge:* Christopher F. Leavey (sitting alone).

*Approved sentence:* Dishonorable discharge, confinement for 7 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 9 July 2015 by GCM convened at Wright-Patterson Air Force Base, Ohio.

*For Appellant:* Major Michael A. Schrama, USAF; Captain Patrick A. Clary, USAF; James P. Fleisher, Esquire.

*For Appellee:* Major Meredith L. Steer, USAF; Major Mary Ellen Payne, USAF; Gerald R. Bruce, Esquire.

Before DUBRISKE, SANTORO, and HARDING, *Appellate Military Judges*.

Judge SANTORO delivered the opinion of the court, in which Senior Judge DUBRISKE and Judge HARDING joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

SANTORO, Judge:

A military judge sitting as a general court-martial convicted Appellant, contrary to his pleas, of one specification of aggravated sexual assault, one specification of making a visual recording of the private area of another, and one specification of distributing that video, in violation of Articles 120 and 120c, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 920c. The adjudged sentence was a dishonorable discharge, confinement for seven years, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the sentence as adjudged.

Appellant raises four assignments of error: (1) the military judge erred in denying Appellant's motion to suppress a statement he made to investigators, (2) the military judge erroneously admitted a video recording, (3) Appellant's convictions for making and distributing the video recording are legally and factually insufficient, and (4) Appellant's sentence is inappropriately severe. We disagree and affirm.

## I. BACKGROUND

Appellant attended a party at a civilian's residence. Many of the approximately 50 guests knew each other, having grown up in the same rural area. Among the attendees was BS, a civilian with whom Appellant had been acquainted for about a year. Appellant and BS had no prior romantic or dating relationship.

During the evening, BS and IF (another party guest) left the party together and walked to an area about 50 feet away from the house where several guests had parked their cars. BS and IF engaged in sexual intercourse in the back seat of a car belonging to BM, BS's friend. The liaison ended when IF received a telephone call from his brother telling him he was coming to pick him up and drive him home before curfew.

It was not clear how much alcohol BS had consumed, but it was undisputed that BS remained nude in BM's vehicle, either incoherent or unconscious, after IF departed. Several partygoers, including Appellant, saw BS in that state. Unlike the other partygoers, however, Appellant made a recording of BS with his cellular telephone. The recording depicted BS on her back in the back seat with her feet hanging outside the vehicle. Toward the end of the recording, Appellant separated BS's legs with his hand and recorded her genitalia. While filming BS, Appellant said, "wake the f**k up. You are naked." He also said, "You are naked. Can I f**k you now? Yeah? Is that a yes? No? Yes? No? . . . Open up your legs." Appellant then engaged in non-consensual sexual intercourse with her. The next day, Appellant sent the recording to a mutual acquaintance, MT.

2

## II. DISCUSSION

### A. Motion to Suppress

After Appellant assaulted BS, he returned to the party, told other guests that he had just had sex with BS, and hinted that another male, ML, should "complete the trio" of having sex with her. The next morning, BS learned from friends that Appellant was claiming he had sex with her. BS went to a local hospital, submitted to a sexual assault examination, and reported the incident to civilian law enforcement.

Detective JN called Appellant and asked if he would be willing to come to the police station for an interview. Appellant agreed. When he arrived, Detective JN told Appellant he was not under arrest and was free to leave but was a subject of the investigation. Detective JN and Deputy Sheriff RM then interviewed Appellant. Detective JN provided written *Miranda*[1] warnings, which Appellant acknowledged and waived. During the interview Appellant admitted making a video of BS and engaging in sexual intercourse with her.

Appellant argues that the military judge erred when he denied his motion to suppress those statements. We review a military judge's denial of a motion to suppress for an abuse of discretion. *United States v. Chatfield*, 67 M.J. 432, 437 (C.A.A.F. 2009) (citing *United States v. Pipkin*, 58 M.J. 358, 360 (C.A.A.F. 2003)). Under this standard, we uphold the military judge's findings of fact unless they are clearly erroneous or unsupported by the record. *United States v. Leedy*, 65 M.J. 208, 213 (C.A.A.F. 2007). We review de novo any conclusions of law. *Chatfield*, 67 M.J. at 437. "A military judge abuses his discretion when (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) . . . incorrect legal principles were used; or (3) . . . his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

The crux of Appellant's argument is that the Prosecution failed to establish that he knowingly, voluntarily, and intelligently waived his *Miranda* rights.[2] Fatal to this position, however, is the military judge's finding that the interview was *non-custodial*, as *Miranda* does not apply to non-custodial interrogations. *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977). Only after the Government's brief noted that the military judge found the interview non-custodial

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] There is no evidence to suggest, nor does Appellant argue, that civilian law enforcement was acting on behalf of the military. Therefore Article 31, UCMJ, 10 U.S.C. § 831, and military jurisprudence interpreting Article 31 are inapplicable to this case. *See United States v. Quillen*, 27 M.J. 312 (C.M.A. 1988).

did Appellant challenge that conclusion and in doing so, claimed that the military judge failed to analyze the relevant facts and law regarding when an interview is "custodial" for *Miranda* purposes. The record does not support that contention.

In his ruling, the military judge correctly noted both *Miranda*'s requirements and its inapplicability to non-custodial interviews. He further noted, citing *Howes v. Fields*, that when determining whether an interview is custodial, courts must determine "whether, in light of 'the objective circumstances of the interrogation,' a 'reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.'" 565 U.S. 499, 509 (2012) (alteration in original) (citations omitted).

In addition to correctly citing the applicable law, the military judge made several findings of fact which are amply supported by the record and which Appellant does not meaningfully challenge.[3] He found that Appellant's presence at the police station was voluntary. The investigators told Appellant that although the door to the interview room was closed for privacy, it was not locked. The investigators also told Appellant that "we're not making you sit down and talk to us." The investigators did not physically abuse or threaten him. They did not yell, scream, or gesture. Appellant was not in any way restrained. Appellant was never prevented from terminating the interview or departing during the interview. The investigators' tones were conversational throughout. The interview lasted less than an hour. Finally, the military judge found that Appellant appeared comfortable with the interrogation until detectives challenged him about his knowledge of the video.[4]

Based on these factual findings, the military judge concluded as a matter of law that the interview was non-custodial. We agree.

Our conclusion that the interview was non-custodial disposes of this assignment of error. Nevertheless, applying *Arizona v. Fulminante*, 499 U.S. 279, 287 (1991); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *United States*

---

[3] As no witnesses testified, the military judge based his ruling on stipulations of the civilian police officers' expected testimony and Appellant's recorded interview. Although we apply a "clearly erroneous" standard when reviewing a trial judge's factual findings, in this case we have the benefit of seeing the same evidence as did the trial judge and we fully agree with his factual findings and legal conclusion.

[4] The only fact in the "custodial" column was that Appellant was arrested at the conclusion of the interview, but that arrest followed his confession. There is no evidence to suggest that investigators had planned to arrest him at the outset of the interview, or that Appellant believed that he was going to be arrested.

*v. Mott*, 72 M.J. 319, 330 (C.A.A.F. 2013); *United States v. Ellis*, 57 M.J. 375, 378–79 (C.A.A.F. 2002); and other relevant cases, we have considered and reject Appellant's argument that the military judge erred in his alternative ruling that Appellant validly waived his *Miranda* rights. There is no evidence whatsoever to suggest that Appellant's waiver was anything but knowing, intelligent, and voluntary.[5] Appellant suggests that the military judge's failure to use the phrase "knowing and intelligent" in his ruling amounts to an abuse of discretion. We disagree. In his written ruling the military judge made conclusions of law that Appellee "made a knowing and voluntary waiver" of his *Miranda* rights. As the Supreme Court expressed it in *Berghuis v. Tompkins,* "[T]he accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused 'in fact *knowingly* and *voluntarily* waived [*Miranda*] rights when making the statement.'" 560 U.S. 370, 382 (2010) (emphasis added) (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). The Supreme Court did not separately mandate a third distinct inquiry that the waiver be intelligent; rather intelligent waiver is embraced by the knowing waiver inquiry. Thus the military judge conducted the required two distinct inquiries that (1) the waiver of counsel was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and (2) that Appellant understood his right to counsel and intelligently and knowingly relinquished it. We find that the military judge's ruling fully considered and resolved the matters before him.[6]

## B. Admission of Video Recording

Appellant next argues that the military judge erred in finding that a sufficient foundation had been established for the admission of the recording of BS.[7] We review a military judge's ruling on the admissibility of evidence for an abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010).

---

[5] We reject Appellant's claim that because he mispronounced the word "coercion," his waiver was not knowing and voluntary. Even assuming Appellant was not familiar with that word—an inference that is speculative at best—Detective JN correctly explained what coercion meant and Appellant acknowledged his understanding.

[6] Nevertheless, in an abundance of caution to ensure the record is complete, we exercise our Article 66(c), UCMJ, 10 U.S.C. § 866(c), authority to find that for the reasons articulated by the military judge, Appellant's waiver was knowing, intelligent, and voluntary.

[7] Appellant also argues that the recording was not relevant. This argument merits little discussion, as the making and distributing of the recording were elements of the offenses at issue. We also reject Appellant's legally-incorrect argument that admission of the recording was error because its probative value did not substantially outweigh its prejudicial impact. *See* Mil. R. Evid. 403 (military judge may exclude relevant evidence if its probative value *is substantially outweighed by* a danger of unfair prejudice).

"The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)).

The recording at issue arrived in law enforcement's hands through a circuitous route between multiple acquaintances: from Appellant to MT to ML to MH to BM and finally to Detective JN. Despite the many stops along the way, the recording was ultimately in Detective JN's possession the day after the party when BS reported the assault.

MT attended the party and saw BS naked in the back seat of BM's car. He testified that Appellant sent him the recording the next day and he recognized BS on the recording as the same person he saw in the back seat of the car.

ML heard about the existence of the video and asked MT to send it to him. MT did.

MH testified that she received the recording from ML and sent it to BM. MH also testified that although she did not watch the entire video, she saw enough to identify BS naked in the back seat of a car and Appellant trying to wake her up.

BM accompanied BS to the hospital when she underwent the sexual assault examination. As BM left the hospital, she received a text message from and later spoke with MH, who told her about the video. BM went back into the hospital and told Detective JN. MH then sent BM the recording via cellular telephone. BM allowed Detective JN to copy the video from her phone onto his laptop computer. BM watched the video, which depicted Appellant shaking BS, asking if he could have sex with her, separating her legs, and taking a close-up of her vagina. BM identified Appellant by his voice, a portion of his face, and a tattoo on his right arm.

As noted above, Appellant told Detective JN that he made a recording of BS. Detective JN did not ask Appellant to watch the video to confirm that the video in Detective JN's possession was, in fact, the recording Appellant made; instead, Detective JN showed Appellant still images taken from that video, which Appellant authenticated.

BS testified that she was unaware that she had been recorded and Appellant did not testify. No other witness testified that he or she was present when the recording was made. There was therefore no testimony from a percipient witness that the recording accurately reflected what occurred.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that

the item is what the proponent claims it is." Mil. R. Evid. 901(a). The rule further outlines several examples of methods of authentication, including the testimony of a witness with knowledge;[8] distinctive characteristics, such as the appearance, contents, and substance of an item, taken together with all the circumstances;[9] opinion about a voice;[10] and evidence about a telephone conversation if the circumstances establish that the person answering was the one who called (or, as applied to the facts of this case, a message sent from a known cellular telephone number to another known cellular telephone number).[11]

Appellant argues that because no witness testified that the recording accurately depicted the events as they occurred, we should apply the "silent witness" theory of authentication. Under this theory,

> a videotape is authenticated by establishing the process by which the videotape was taken, i.e. the installation of the camera, use and security of the camera, testing, and removal of the film and testimony as to the chain of custody. Upon establishing this foundation, it is admissible . . . without a corroborative eyewitness.

*United States v. Reichart*, 31 M.J. 521, 523–24 (A.C.M.R. 1990).

The "silent witness" theory, however, generally applies to circumstances in which government actors or private security cameras generate the recording at issue. *See United States v. O'Connell*, 841 F.2d 1408, 1420 (8th Cir. 1988) (noting this theory has particular application to government usage of recording equipment where special concerns may arise regarding the competence and reliability of inculpatory evidence). "In contrast, when the facts demonstrate that the recording was found in a defendant's possession, it should not be 'subject to the same [authentication] requirements we apply when a government agent or informant initiates a conversation knowing that it is to be recorded.'" *United States v. Kandiel*, 865 F.2d 967, 973 (8th Cir. 1989) (quoting *O'Connell*, 841 F.2d at 1420).

We agree with the Eighth Circuit and do not believe the "silent witness" theory is applicable to this case. The exhibit was purported to be a recording of the private area of BS made at the time and place in question. Appellant admitted making the recording at issue and he himself sent it to MT. Although

---

[8] Mil. R. Evid. 901(b)(1).

[9] Mil. R. Evid. 901(b)(4).

[10] Mil. R. Evid. 901(b)(5).

[11] Mil. R. Evid. 901(b)(6)(A).

MT was not asked to authenticate the recording at trial, he described its contents on both direct and cross-examination and was unequivocal that it depicted BS in the car on the night in question.

Three witnesses identified BS in the recording and testified that her appearance was consistent with their observations of her on the night of the assault. Two witnesses identified Appellant in the recording and Appellant himself admitted that he appeared in screen shots taken from that video. There is no evidence that the recording was altered along its travels despite Appellant's having the opportunity to explore that possibility during cross-examination.[12] We therefore conclude that the military judge did not err in his determination that a sufficient foundation had been established for the recording's admissibility.

## C. Legal and Factual Sufficiency

Appellant argues that the evidence is both legally and factually insufficient to sustain his convictions for making and distributing the recording of BS. We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001); *see also United States v. McGinty*, 38 M.J. 131, 132 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of [Appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. The term reasonable doubt, however, does not mean that the evidence must be free from

---

[12] Even if a chain of custody were required for evidence of this type—a finding we do not make—a break in the chain would normally go to the weight of the evidence rather than its admissibility, as the military judge noted when he overruled Appellant's objection. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 322 n.1 (2009).

conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

One of the elements for both specifications at issue is that at the time the recording was made, the recorded person had a reasonable expectation of privacy. *See* Department of the Army Pamphlet 27-9, *Military Judges' Benchbook*, ¶ 3-45c-1 (10 Sep. 2014). Appellant argues that BS did not have a reasonable expectation of privacy for two reasons: first, because BS had no possessory interest in the car in which she was recorded and second, because she was voluntarily naked in the back seat of a parked car in what he asserts was a public area.

The Government counters by arguing that under the circumstances of this case, the parked car was not sufficiently "public" to remove BS's expectation of privacy. The Government also argues that even if BS had no reasonable expectation of privacy in the back seat of the car generally, she retained an expectation of privacy with respect to portions of her genitalia that were not visible as she lay on the seat; Appellant's separation of her legs was therefore sufficient to violate her reasonable expectation of privacy with respect to what Appellant could not have seen without physically manipulating her body.

With respect to the first claim, Appellant argues that "reasonable expectation of privacy" is a term of art and invites us to incorporate the Fourth Amendment's definition of the term to conclude that because BS had no possessory interest in the vehicle in which she disrobed, she therefore had no reasonable expectation of privacy therein. *See Rakas v. Illinois*, 439 U.S. 128, 148 (1978). The problem with this argument is that Article 120c itself defines what "reasonable expectation of privacy" means in this context.

Article 120c prohibits viewing, recording, or broadcasting the private area of another person, without that person's consent and under circumstances in which that other person has a reasonable expectation of privacy. Article 120c(a), UCMJ.

> The term "under circumstances in which that other person has a reasonable expectation of privacy" means—(A) circumstances in which a reasonable person would believe that he or she could disrobe in privacy, without being concerned that an image of a private area of the person was being captured; or (B) circumstances in which a reasonable person would believe that a private area of the person would not be visible to the public.

Article 120c(d)(3). One's "private area" is one's "naked or underwear-clad genitalia, anus, buttocks, or female areola or nipple." Article 120c(d)(2).

We reject Appellant's application of Fourth Amendment "reasonable expectation of privacy" doctrine as it applies to Article 120c because the statutory language is clear and defines that phrase as it applies to this statute. *See United States v. McPherson*, 73 M.J. 393, 395 (C.A.A.F. 2014). Our rejection of *Rakas*'s application directly to these facts does not, however, remove the requirement that BS's belief that she could disrobe in privacy or that her private area would not be visible to the public must still be reasonable under the circumstances.

The facts in this case appear to meet both prongs of the Article 120c(d)(3) definition. The testimony established that IF and BS left the party and went to the parked car intending to engage in sexual conduct. The logical (and only reasonable) inference to be drawn from that conduct is that both IF and BS wanted to disrobe and engage in that activity in private, outside the view of the other partygoers (the "public" in this case). Although other partygoers eventually found them and apparently watched some of their activity, that alone does not preclude a finding that BS did not reasonably think she would be free from prying eyes.

We cannot say that when viewing the evidence in the light most favorable to the Prosecution, a reasonable fact-finder could not have found that BS had a reasonable expectation of privacy (as defined by Article 120c) generally or, at a minimum, with respect to that which Appellant could only view by manipulating her body without her consent. We therefore conclude that the evidence is legally sufficient to support Appellant's convictions on either theory. We have reviewed the evidence offered at trial. Giving appropriate deference to the trial court's ability to see and hear the witnesses, and after our own independent review of the record, we are ourselves convinced of Appellant's guilt beyond a reasonable doubt.

## D. Sentence Severity

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (2006); *United States v. Baier*, 60 M.J. 382, 383–84 (2005). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). We assess sentence appropriateness by considering Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all matters contained in the record of trial. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982); *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006), *aff'd*, 65 M.J. 35 (2007). While we have a great deal of discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999); *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988).

In reviewing for sentence appropriateness, we "are required to engage in sentence comparison only 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). Appellant bears the burden of demonstrating that the cited cases are "closely related" to his and the sentences are "highly disparate." *Lacy*, 50 M.J. at 288. Closely-related cases include those which pertain to "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id.* If Appellant meets this burden, the Government "must show that there is a rational basis for the disparity." *Id.* However, "[s]entence comparison does not require sentence equation." *United States v. Durant*, 55 M.J. 258, 260 (C.A.A.F. 2001).

The maximum imposable sentence was confinement for 42 years and a dishonorable discharge. The approved sentence of confinement for seven years and a dishonorable discharge was clearly within the discretion of the convening authority and appropriate for this Airman who took advantage of a compromised victim, sexually assaulted her, made a recording of her private area, and distributed it to others.

Appellant provided citations to several published and unpublished cases he argues are closely related to his and that we should consider in evaluating the appropriateness of his sentence. However, the cases do not involve any co-actors in Appellant's offenses, a common or parallel scheme, or any other direct nexus to his case. *See Lacy*, 50 M.J. at 288. Because these cases and Appellant's are not closely related, disparities between the sentences in those cases and Appellant's are attributed to the facts present in each individual case. Accordingly, Appellant has failed to carry his burden to establish that the cases are closely related and the sentences highly disparate.

## III. CONCLUSION

The findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court